| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | | |
|---|---|---|
| In Re: | Case No.: | 26-16616-ABA |
| Roslyn Louise Lopez, | Chapter: | 13 |
| Debtor. | Judge: | Andrew B. Altenburg, Jr. |

# MEMORANDUM DECISION

## I. INTRODUCTION

This matter comes before the court by: (1) its own *Order To Show Cause Why Case Should Not Be Dismissed With Prejudice And Why A 2-Year Bar Should Not Be Imposed On Future Filings* (the "OSC")*,* (Doc. No. 35); (2) the request of Andrew B. Finberg, the standing Chapter 13 trustee ("Standing Trustee") seeking an order dismissing the current case filed by Roslyn Louise Lopez (the "Debtor") for not having been filed in good faith and imposing a two-year bar (the "Trustee's Request"), Doc. No. 8; and (3) for confirmation of the Debtor's modified plan, Doc. Nos. 46 and 66. After numerous adjournments requested by the Debtor of a plenary hearing and that plenary hearing failed, the court requested the parties to submit their positions and evidence in writing, which the parties did, Doc. Nos. 53, 59, 63 and 64. Based upon the entire record, including the history of the Debtor's multiple bankruptcy cases, her repeated pattern in each of her cases. her failure to abide by her duties as a Debtor, her failure to propose a feasible plan, her lack of credibility and accountability, and her abusive and obstructive conduct, the court finds that the case should be dismissed, denies confirmation of the most recent modified plan, and further finds that the Debtor failed to comply with her duties as a chapter 13 debtor and cannot propose a feasible plan and that this case has not been filed in good faith warranting a dismissal of the case with a two-year bar on future filings.

## II. JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012 and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## III. GENERAL OVERVIEW AND PURPOSE OF A CHAPTER 13 CASE

The court is intimately familiar with the Debtor in this current case, and her many past bankruptcy cases in New Jersey.[1] As such, to support its findings of facts and conclusions of law here, the court has reviewed the dockets in her past cases.[2] In particular, the court has studied its own *Memorandum Decision* issued in the Debtor's last New Jersey bankruptcy case, Bankr. Case No. 23-10694-ABA which was dismissed for bad faith with an 180 day bar on future filings. *See In re Napier-Lopez*, No. 23-10694-ABA, 2023 WL 3260150 (Bankr. D.N.J. May 4, 2023) (the "2023 Opinion"). Some of the 2023 Opinion bears repeating here or is incorporated herein as it supports a finding of another abusive filing by the Debtor especially here, where the Debtor was previously made aware of her duties and the problem patterns with her multiple past cases but continues to ignore her duties and those problems in proceeding with this case.

As was explained to the Debtor:

**The Purpose Of A Chapter 13 Case and The Honest But Unfortunate Debtors**: "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991)). Indeed,

> Limiting relief to the "honest but unfortunate debtor" is so enshrined in the Bankruptcy Code that Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") when a perceived increase in serial and abusive filings seemingly threatened that foundation. . . . In sum, Congress made manifest its intent to curtail abusive filings and limit bankruptcy relief to the "honest but unfortunate debtor."

*In re Reppert*, 643 B.R. 828, 840 (Bankr. W.D. Pa. 2022). "Inherent in the concept of the 'honest debtor' are the attributes of '[g]ood faith and candor,' which 'are necessary prerequisites' to ***any*** bankruptcy filing." *In re Campbell*, 634 B.R. 647, 653 (Bankr. D.D.C. 2021) (emphasis added) (quoting *In re Zick*, 931 F.2d 1124, 1129-30 (6th Cir. 1991)). "The 'solicitude of Congress ... stops at the debtor who does not measure up to that appealing image' of the 'honest but unfortunate debtor.'" *In re Hatton*, 204 B.R. 477, 482 (E.D. Va. 1997)(citations omitted).

**The Protections Provided To The Honest But Unfortunate Chapter 13 Debtors**: To that end, filing a bankruptcy petition is a significant endeavor, as a bankruptcy case is a serious

---

[1] The Debtor has been a debtor in a New Jersey bankruptcy case *twelve* times but the court is limiting its discussion herein only to the six (6) cases over which it presided and the Debtor filed on her own behalf.

[2] The court may take judicial notice of the docket entries in any of the Debtor's cases. Fed. R. Evid. 201, incorporated in these proceedings by Fed. R. Bankr. P. 9017. *See In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 204 (3d Cir. 1995); *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n.3 (3d Cir. 1991). The court may also take judicial notice of any opinion rendered in those cases. *See also M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010) ("a prior judicial opinion constitutes a public record of which a court may take judicial notice.").

proceeding that has pronounced legal effects on debtors and creditors alike. By filing a bankruptcy petition and seeking safe harbor among the provisions of the Bankruptcy Code, a debtor gains access to a number of powerful protections unavailable outside of bankruptcy.

**The Automatic Stay For The Honest But Unfortunate Chapter 13 Debtors**: Chief among these protections is the automatic stay. *See* 11 U.S.C. § 362(a). The moment a case is filed, the automatic stay leaps into effect by operation of law and provides fundamental protection to debtors from actions to collect on prepetition debt. *Id.*; Chapter 13 – Bankruptcy Basics, U.S. COURTS, https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-13-bankruptcy-basics (last visited November 18, 2026); *see also* 11 U.S.C. §§ 362(a)(1), and (6). "The filing of the bankruptcy case acts to give debtors, including debtors in chapter 13 cases, a breathing spell from creditors. ... By halting litigation against the debtor, the [automatic] stay gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.'" *In re Morrow*, 495 B.R. 378, 386 (Bankr. N.D. Ill. 2013) (quoting *Kimbrell v. Brown,* 651 F.3d 752, 755 (7th Cir. 2011) (*citing* H.R. Rep. No. 95–595, at 340 (1978), *reprinted in* 1978 U.S.C.CA.N. 5963, 6296–97)) (internal quotation marks omitted). "The purpose of that stay is to give the harried debtor breathing room to formulate a plan to address the debtor's obligations." *In re Moore*, 247 B.R. 677, 683 (Bankr. W.D. Mich. 2000). And although some exceptions apply and other protections exist, generally "[i]n a Chapter 13 case context, the automatic stay permits the Debtor (lessee) to attempt reorganization, and to assume the lease and cure the default[.]" *In re Lowry*, 25 B.R. 52, 56 (Bankr. E.D. Mo. 1982). Likewise, the automatic stay allows a debtor to propose a plan which allows it to cure a default on a secured loan, like a car loan, and maintain ordinary payments to the creditor. *In re Page*, 658 B.R. 178, 184–85 (Bankr. E.D. Wash. 2024) and *In re Ayres-Haley*, No. 07-10314-SSM, 2008 WL 163580 (Bankr. E.D. Va. Jan. 16, 2008). Finally, the automatic stay allows a debtor to "modify the rights of holders of secured claims," 11 U.S.C. § 1322(b)(2), through their plan without the fear of losing the property which is secured.

**The Chapter 13 Plan For The Honest But Unfortunate Chapter 13 Debtors**: A Chapter 13 bankruptcy case allows individuals *with regular income* to pay off their debts—in whole, or as is more often the case, in part—over the course of three to five years. 11 U.S.C. §§ 109(e), and 1322. "In proposing a plan of reorganization under Chapter 13, a debtor may seek to 'catch up' on past-due payments or, in certain circumstances, to alter the terms of a debt." *In re Litton*, 330 F.3d 636, 640 (4th Cir. 2003). For example, debtors may save their homes by staying foreclosure or eviction proceedings or keep their cars and prevent repossession by curing their arrears over the life of their plan. 11 U.S.C. § 1322(b)(3); *see generally* Chapter 13 – Bankruptcy Basics, cited *supra*; 8 Collier on Bankruptcy, ¶ 1300.01 (Matthew Bender 2023). As noted above, in some cases, a debtor may "modify the rights of holders of secured claims," 11 U.S.C. § 1322(b)(2), for example, when the "debtor invokes the so-called "cram down" power, *see* § 1325(a)(5)(B)" to adjust the value of collateral, *Associates Com. Corp. v. Rash*, 520 U.S. 953, 957 (1997), or to adjust interest rates on secured loans. *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004).

But *only debtors* may propose a Chapter 13 plan, 11 U.S.C. § 1321, and so long as their plan meets the statutory requirements for confirmation set forth in section 1322(a), and the debtor has complied with his or her duties, the Code affords debtors significant discretion in choosing

how to repay their debts. 11 U.S.C. § 1322(b); 8 Collier on Bankruptcy, ¶ 1300.01. Debtors have the discretion to choose whether to reject or accept residential leases and other contracts like car loans, cure prepetition defaults through their plan or adjust value or interest rates, exempt assets from the bankruptcy estate, and decide whether to fund their plan using future income or from the sale of assets, or both. 11 U.S.C. §§ 522(b), (d); 1322(b)(3), (7), (8). Upon successfully completing a Chapter 13 plan, debtors are entitled to a discharge, which, with limited exceptions, releases them from personal liability of all debts allowed or provided for by the plan. 11 U.S.C. § 1328(a); Chapter 13 – Bankruptcy Basics, *supra*.

Indeed, in the hands of honest but unfortunate debtors, bankruptcy can be a powerful, transformative tool. In the hands of dishonest debtors, however, bankruptcy can be a weapon for abuse and fraud. Fortunately, the Bankruptcy Code contains safeguards to prevent abuse, and the Chapter 13 trustee plays a key role. *In re Shelton*, 592 B.R. 193 (Bankr. N.D. Ill. 2018).

**The Role of the Chapter 13 Trustee For The Honest But Unfortunate Chapter 13 Debtors**: The "basic role [of a Chapter 13 trustee] is to review plans, advise the Court with respect to plans and act as a disbursing agent under confirmed plans...." *In re Bowker*, 245 B.R. 192, 195 (Bankr. D.N.J. 2000) (citations omitted). Importantly, the Chapter 13 trustee "is not providing the Debtors with advice on legal matters, nor is he representing the Debtors." *In re Johnson*, 13 B.R. 263, 263 (Bankr. D.R.I. 1981). *See also*, *In re Heath*, 198 B.R. 298, 302 (S.D. Ind. 1996), *aff'd sub nom. Matter of Heath*, 115 F.3d 521 (7th Cir. 1997) (citing *Johnson*, 13 B.R. at 263). Instead, the Chapter 13 trustee is an impartial case trustee, like the Standing Trustee here, and is appointed to administer the case and represent the interests of the bankruptcy estate. 11 U.S.C. § 1302.

In their role, the Chapter 13 trustee is responsible for accounting for property received from debtors, investigating the debtors' financial affairs, and examining creditors' claims. 11 U.S.C. §§ 704, 1302(b)(1); *see also* 8 Collier on Bankruptcy, ¶ 1302.03 (describing the duties of the Chapter 13 trustee). To assist in that role, sections 521(a)(3) and (4) and Fed. R. Bankr. P. 4002 *require debtors to cooperate with and provide documents to the Trustee* and to cooperate with the Trustee in administering the estate. The Chapter 13 trustee also holds a meeting of creditors, at which the trustee places debtors under oath and both the trustee and creditors may ask debtors questions. 11 U.S.C. § 341(a). In addition to being required to provide documents for this meeting, debtors are required to attend this meeting, and must, under oath, answer questions. 11 U.S.C. § 343; Fed. R. Bankr. P. 4002. This meeting is a crucial part of the bankruptcy process, as it allows the parties involved to gain a clear understanding of debtors' financial affairs. This information may be used, for example, to determine whether there are grounds for dismissal of the case, whether a reorganization is feasible, or whether all of the debtors' assets are accurately reflected in the debtors' schedules. *See, e.g.*, *In re Lopez*, 532 B.R. 140, 146 (Bankr. C.D. Cal. 2015); *In re Johnson*, 291 B.R. 462, 468 (Bankr. D. Minn. 2003); *In re Vilt*, 56 B.R. 723, 725 (Bankr. N.D. Ill. 1986). It is the function of the Chapter 13 trustee to either recommend confirmation or object to confirmation. *Shelton*, 592 B.R. at 211.

**The Duties Of The Honest But Unfortunate Chapter 13 Debtors**: While the Bankruptcy Code provides significant protection and rights to debtors, in exchange for those protections and rights, it also imposes duties and responsibilities on debtors. *See generally* 11 U.S.C. § 521; Fed. R. Bankr. P. 4002 and *In re Ward*, 423 B.R. 22 (Bankr. E.D.N.Y. 2010).. Consequently, the rights

and protections afforded to debtors under the Bankruptcy Code are "qualified by their compliance with their duties and obligations as a chapter 13 debtor." *See In re Lepore*, 678 B.R. 702, 706 (Bankr. D.R.I. 2026). And to be clear, *THESE ARE THE DEBTOR'S DUTIES - NOT THE TRUSTEE'S DUTIES*. These duties and responsibilities serve as further safeguards to prevent abuse.

Without question, the necessary prerequisites of good faith and candor imposed upon an honest but unfortunate debtor, *Zick*, 931 F.2d at 1129–30, are interwoven into the duties and disclosure requirements placed on debtors by the Bankruptcy Code and Rules. Key to the bankruptcy process is the duty of debtors to file ***complete and accurate*** schedules of assets and liabilities, current income and expenditures, executory contracts and unexpired leases, as well as a Statement of Financial Affairs. *Id.*; Fed. R. Bankr. P. 1007(b)(1); *In re Schapiro*, No. 96-13357DWS, 1997 WL 367201, at *6 n.24 (Bankr. E.D. Pa. June 6, 1997) ("A debtor's duty to file complete and accurate schedules, *see* 11 U.S.C. § 521, is paramount"); *In re Green*, 141 B.R. 440, 442 (Bankr. M.D. Fla. 1992) (the requirements of § 521(1) are "some of the most important duties of a debtor"); *In re Dreyer*, 127 B.R. 587, 593 (Bankr. N.D. Tex. 1991) ("The bankruptcy system relies on a debtor to deal honestly with his creditors by making *full, complete and honest disclosure* in his statements and schedules.") (emphasis added) (citing *Hudson v. Wylie*, 242 F.2d 435 (9th Cir.), *cert. denied*, 355 U.S. 828 (1957)). Additionally, on the bankruptcy petition itself, debtors must list *all creditors* with *accurate addresses* and the amounts and nature of their claims, essentially, basic information. Chapter 13 – Bankruptcy Basics, *supra.* Debtors must also disclose the "source, amount, and frequency" of their *income and expenses*, as well as all of their assets and property. *Id.* In addition, debtors must, for example, also provide the Chapter 13 trustee evidence of: their social security number, Fed. R. Bankr. P. 4002(b)(1)(B); current income, Fed. R. Bankr. P. 4002(b)(2)(A); every bank account statement, 4002(b)(2)(B); and the most recent payment advice and federal income tax return for the most recent tax year ending immediately before the commencement of the case, 11 U.S.C. § 521(e)(2)(A) and Fed. R. Bankr. P. 4002(b)(3).

Taken together, these disclosure requirements serve the important purposes of preventing fraud and abuse and ensuring a proper case administration. The requirement that debtors list their creditors, for instance, prevents debtors from evading creditors, thus ensuring that creditors are treated fairly. The requirement that debtors disclose their assets, income, and property prevents debtors from concealing assets from creditors, and in turn facilitates a fair distribution of those assets in accordance with the intent and purposes of Chapter 13 and the Bankruptcy Code. *See, e.g.*, *In re Bossart*, 05-34015-H4-7, 2007 WL 4561300, at *16 (Bankr. S.D. Tex. Dec. 21, 2007), *aff'd sub nom*, *Bossart v. Havis*, 389 B.R. 511 (S.D. Tex. 2008), *aff'd sub nom*, *In re Bossart*, 296 Fed. App'x 398 (5th Cir. 2008).

As was previously explained to the Debtor in the 2023 Opinion, by requiring debtors to provide basic, accurate, and complete information to, and cooperate with, the Chapter 13 trustee, these disclosure requirements promote transparency and enable the Chapter 13 trustee and creditors to make informed decisions about how to proceed. *In re Dupal*, No. 10-62362, 2011 WL 2213975, at *3 (Bankr. N.D. Ohio June 7, 2011) ("Full disclosure allows the trustee and creditors the opportunity to examine and investigate a debtor's financial transactions and pre-bankruptcy dealings to make informed decisions. When debtor is not forthright, the system is denigrated."). Importantly, these disclosure requirements serve as a safeguard that promotes the proper and

efficient administration of the bankruptcy estate by enabling the Chapter 13 trustee to conduct their duties, administer the bankruptcy estate, and make distributions to creditors. In exchange, the honest but unfortunate debtor earns the protections and rights afforded by Chapter 13 of the Bankruptcy Code.

It is also the duty of every debtor to "attend and submit to an examination when the court orders." Fed. R. Bankr. P. 4002(a)(1). What is more, it is implicit in the duties of every debtor to abide by the court's order or risk dismissal of their case. *In re Herrera*, 194 B.R. 178, 189 (Bankr. N.D. Ill. 1996); *In re Ellis*, 48 B.R. 178, 179 (Bankr. E.D.N.Y. 1985).

Finally, chapter 13 debtors must pay filing fees, 28 U.S.C. § 1930 and Fed. R. Bankr. P. 1006, and have "an ongoing duty to pay postpetition obligations" when due. *In re Danastorg*, 382 B.R. 585, 588 (Bankr. D. Mass. 2008). Since debtors are required to make plan payments to the trustee under 11 U.S.C. § 1326 such payments are a post-petition obligation imposed upon them. *In re Heinzle*, 511 B.R. 69, 79 (Bankr. W.D. Tex. 2014) (payments required under a plan are post-petition obligations). Indeed, the failure to make such payments is grounds for dismissal of the case under 11 U.S.C. § 1307.

As demonstrated below, the Debtor does not measure up to that appealing image of the honest but unfortunate debtor, despite having previously been advised through the 2023 Opinion of what is required, has once again shirked her duties, been given multiple opportunities and accommodations, and ignored the court's orders. And despite having been given the opportunity to address the issues raised by the Standing Trustee and defend her case in court, she has chosen again to be obstructive and lay scandalous allegations against the Standing Trustee and the court without even attempting to address the shortcomings in her duties, pleadings and plans.

## IV. PROCEDURAL HISTORY

The Debtor commenced this current bankruptcy case on June 5, 2026, by filing an emergency petition[3] - Bankr. Case No. 26-16616, Doc. No. 1 (the "Current Case"). Because it was an emergency petition, the court issued an *Order to Show Cause Why Case Should Not be Dismissed for re: Failure to File Missing Documents* ("First OSC"). Doc. No. 6. In response to the First OSC, on June 11, 2026, the Standing Trustee filed the Trustee Request alleging bad faith and seeking a "Two-Year bar on future filings under any chapter and such other sanctions as this Court may deem appropriate to deter repetition of such conduct by the Debtor . . . "). Doc. No. 8 at 2.

The Debtor was advised of the date of her Meeting of Creditors under section 341 of the Bankruptcy Code as that notice was properly served on her. *See* Doc. Nos. 1 and 10. There is no

[3] An "emergency petition," also known as a "bare-bones petition," is usually a petition (Official Form 101) and list of creditors that is filed without the remaining necessary schedules, statements and other documents required by Fed. R. Bankr. P. 1007. Generally, it is filed when facing an immediate emergency—such as an eviction or sheriff sale—and is done to stop that process. The schedules, statements, and other documents then are to be filed within fourteen days of the filing of the petition. Fed. R. Bankr. P. 1007(c).

evidence to suggest that the Debtor did not receive notice of the Meeting of Creditors. Ultimately, the Meeting of Creditors was not held as the Standing Trustee had not received the required documentation. Doc. 53 (the 'Standing Trustee Brief') at ¶ 31.

In addition, the Debtor was properly served with the *Notice Of Hearing On Confirmation Of Plan* scheduling confirmation of her chapter 13 plan for August 26, 2026 (the "Confirmation Hearing"). *See* Doc. Nos. 1 and 22. There is no evidence to suggest that the Debtor did not receive notice of the Confirmation Hearing.

Because she did not include with her petition any of the schedules, statements, or other documents required by Fed. R. Bankr. P. 1007, the Debtor had the duty to file those within fourteen days. Fed. R. Bankr. P. 1007(c). She did not. Instead, not until the return date of the First OSC, June 30, 2026, did the Debtor file what purported to be her missing documents including her proposed chapter 13 plan ("Plan"). *See* Doc. Nos. 13 and 15. As discussed in Section V, iv, below, those missing documents were woefully deficient. Nevertheless, the court accommodated the Debtor by allowing the case to continue despite missing the deadline.

On June 30, 2026, the Debtor, *seeking a chief protection afforded by the Bankruptcy Code*, filed her *Motion to Extend Automatic Stay* (the "Automatic Stay Motion"). Doc. No. 16. The Debtor was sophisticated enough to understand that the Automatic Stay Motion was necessary due to the fact that she had had one bankruptcy case pending within the preceding one-year period but was dismissed and therefore, the automatic stay would expire within thirty days of the date of the petition if she did not seek an extension of the automatic stay within that thirty days. *See* 11 U.S.C. § 362(c)(3). In support of her request, the Debtor stated that there "has been a substantial change in circumstances, both financially and personally." Doc. No. 16-1 at ¶ 1. A substantial change is a necessary statutory element to grant the relief requested. 11 U.S.C. § 362(c)(3)(C)(III). She also stated that another reason to grant relief under the statute was that she would be obtaining an attorney. Doc. No. 16-1 at ¶ 3. She never did. Additionally, the Debtor was sophisticated enough to understand that she needed to have the Automatic Stay Motion heard on shortened time because the thirty-day period was about to expire. Doc. No. 17. As an accommodation to the Debtor, the Automatic Stay Motion was heard on shortened time for the relief requested therein to be timely granted under the Bankruptcy Code. *See* 11 U.S.C. § 362(c)(3). The court granted the Automatic Stay Motion as unopposed on July 2, 2026. Doc. No. 21.

Exeter Finance LLC ("Exeter"), the secured creditor of the Debtor, for the Debtor's 2021 Toyota Venza, filed an objection to the Plan. Doc. No. 31.

As there was an issue concerning bad faith in connection with the filing of the Current Case, the court provided due process to the Debtor by issuing a Notice of Hearing on bad faith on June 30, 2026. Doc. No. 20. The court advised the Debtor that ***it would be a plenary hearing***. *See* Minute Entry 06/30/2026. The plenary hearing was scheduled for July 28, 2026. The Notice of Hearing was properly served on the Debtor. *See* Doc. Nos. 19 and 23. It is important to note that, contrary to her repeated allegations denying such, the Debtor was directly provided with the exhibits that the Standing Trustee would be using in connection with the plenary hearing. Doc. No. 59 at ¶ 27 and Ex. F. The Debtor was also advised by the court on July 16, 2026, that if she

was going to rely on exhibits for the plenary hearing, those exhibits must be delivered by July 21, 2026. Doc. No. 57. The Debtor did not provide any exhibits.

On July 27, 2026, the day before the scheduled plenary hearing, the Debtor requested her first adjournment of the plenary hearing due to a *prescheduled* medical appointment. *See* Doc. No. 28. In her request, the Debtor *acknowledged that the hearing was a plenary hearing*. *Id.* at ¶¶ 2-3. The court accommodated the Debtor and advised her on July 27, 2026, directly by email that "[t]he *Plenary Hearing* on bad faith filing has been rescheduled from July 28th at 10:30 a.m. to August 12th at 11 a.m. In person appearances are required." Doc. No. 29 (emphasis added).

On or about August 12, 2026, the Debtor requested her second adjournment of the plenary hearing stating that she was required by subpoena to appear in another court on that day. *See* Doc. No. 32. Despite the incredibly late notice, the court accommodated the Debtor and adjourned the plenary hearing to August 26, 2026, to be heard together with the scheduled Confirmation Hearing of the Plan on that day. *See* Minute Entry 8/12/2026 (hearing held and continued).

On August 25, 2026, the Debtor, again the day before the plenary hearing, requested her third adjournment due to a medical issue. The court again accommodated the Debtor and advised the Debtor that it would place the adjournment on the record on August 26, 2026, which it did. *See* Doc. Nos. 33 and 34. *Both* the plenary hearing on bad faith and Confirmation Hearing were rescheduled to September 23, 2026.

On August 27, 2026, to make it abundantly clear on what was expected of the Debtor, the court issued an *Order To Show Cause Why Case Should Not Be Dismissed With Prejudice And Why A 2-Year Bar Should Not Be Imposed On Future Filings* in which the court recited the aforementioned history and noted that, *inter alia*:

* * *

> **WHEREAS** again on the eve of the Bad Faith Hearing the Debtor submitted an adjournment request stating she was unable to attend for medical reasons, Doc. No. 34, and as proof, provided directly to the court with proof. The court accommodated that request by stating so on the record when the called the Bad Faith Hearing ring on August 26, 2026; and
>
> **WHEREAS** as noted above, confirmation of the Debtor's chapter 13 plan was also scheduled for August 26, 2026. Only the Trustee appeared. The Debtor did not ask for an adjournment of the confirmation hearing. Nevertheless, knowing that the Debtor's absence will surely be attributed to her medical condition, the court asked the Trustee to provide a status of the Debtor's case for confirmation. The Trustee advised the court that he would recommend dismissal of the Debtor's case because of the Debtor's:
>
> - failure to attend the Section 341(a) meeting
> - failure to attempt to the reschedule the Section 341(a) meeting
> - failure to make all required pre-confirmation payments to the Trustee

• failure to provide all required documents to the Trustee;

All grounds, individually and collectively, for denial of confirmation and

**FOR GOOD CAUSE SHOWN**; it is

**ORDERED** that a ***FINAL*** Bad Faith Hearing shall be held in person on September 23, 2026 at 11:00 a.m. in Courtroom 4B, 400 Cooper Street, Camden, New Jersey for the Debtor Roslyn Louise Lopez to show cause why the case should not be dismissed as a bad faith filing and why the court should not issue a **Two-Year bar** on future filings under any chapter for her abusive filings and such other sanctions as this Court may deem appropriate. **NO FURTHER ADJOURNMENTS WILL BE ALLOWED.** The Bad Faith Hearing will take place whether or not the Debtor appears.

**IT IS FURTHER ORDERED** that the Debtor Roslyn Louise Lopez shall file a response and exhibits she intends to present at the Bad Faith Hearing, if any, by September 11, 2026, with the failure to do so preventing her from presenting any exhibits at the Bad Faith Hearing.

**IT IS FURTHER ORDERED** that the hearing on confirmation of the Debtor's chapter 13 plan shall be adjourned to September 23, 2026 at 11:00 a.m. or until such time the court is able to address the matter.

Doc. No. 35 (the "Dismissal OSC"). The Dismissal OSC was clear as to what hearings were to take place on September 23, 2026. The Dismissal OSC was properly served on the Debtor. *See* Doc. No. 36. The Debtor did not file a response or exhibits.

Then for the hearings on September 23, 2026, contrary to the court's order, the Debtor appeared by telephone and not in person as required. The court nevertheless accommodated the Debtor by allowing the hearings to continue without requiring the Debtor to appear in person. The Debtor feigned ignorance claiming that she had no idea what hearings were taking place despite the language of the Dismissal OSC.[4]

At the hearings on September 23, 2026, the Debtor was very contentious and argumentative and in fact, made scandalous allegations about the court and the Standing Trustee and essentially blamed everyone else for the problems with her case. The Debtor did not take any responsibility for her pleadings, actions, or case.

Notwithstanding the Debtor's absurd comments, the court considered the Debtor's original Plan and found, *inter alia*, that it violated 11 U.S.C. § 1322(d) as the length of the Plan payments (either 120 or 300 months) exceeded the time limits allowed by law; the Debtor's own schedules, Doc. No. 15 ("Schedules"), which the Debtor admitted were prepared, signed and filed by her,

[4] A curious statement since *only* the Dismissal OSC provided the reason for, and date and time of the hearings. So, the Debtor knew enough to appear but did not know what the hearings were about? An incredible position.

evidenced that the Debtor's current monthly income is -$3,308 making the Debtor's plan patently not feasible as a debtor must have monthly disposable income and the ability to make their plan payments under 11 U.S.C. §§ 109(e), and 1322, *see* Schedules I and J, Doc. No. 15, at 28-32. In addition, the Debtor had failed to acknowledge or address the valid objection to the Plan filed by Exeter. As a result, the court entered an Order Denying Confirmation of Chapter 13 Plan. *See* Doc. No. 43.

Nevertheless, *after explaining all the issues to the Debtor*, the court gave the Debtor another chance to clean up the problems with her case and effectively granted her a fourth adjournment of the plenary hearing on bad faith by allowing her to file a modified plan and amended Schedules and to convince the court at the plenary hearing that the case was not filed in bad faith. It specifically ordered:

> **IT IS ORDERED** that Confirmation of Debtor's Chapter 13 Plan (Doc No. 13) is hereby denied; and
>
> **IT IS FURTHER ORDERED** that Debtor shall file a Modified Chapter 13 Plan and/or any revised Schedules on or before October 7, 2026; and
>
> **IT IS FURTHER ORDERED** that the *Plenary Hearing* on Bad Faith Filings (Doc No. 20) and the Plenary hearing on the Order to Show Cause Why Case Should Not be Dismissed With Prejudice and Why a 2-Year Bar Should Not be Imposed on Future Filings (Doc No. 35), and the Confirmation Hearing for the Modified Chapter 13 Plan to be filed on or before October 7, 2026, is hereby scheduled for Wednesday, October 14, 2026, at 11:00 a.m.
>
> **IT IS FURTHER ORDERED** that *Debtor's in-person appearance is required.*

Doc. No. 43 (the "9/24 Order") (emphasis added).

Consistent with the 9/24 Order, the Debtor filed a modified plan ( the "First Modified Plan") and revised only Schedules I and J. Doc. Nos. 46 and 48. The First Modified Plan called for monthly payments of $666 a month for 60 months and provides for improper treatment of the total secured claim of Exeter in the amount of $70,309.84. Doc. No. 49. The Debtor's revised Schedules reflected another source of income not previously identified, as well as has removal of many of her expenses including a rental or home ownership expense (the Debtor stated at the September 23 Hearing that she is living in a hotel but no such expense is provided). The Schedules stated that she had a net monthly income of $875. Doc. No. 48.

Astonishingly, on or about the day of the plenary hearing and confirmation hearing October 14, 2026, the Debtor submitted her *FIFTH* adjournment request for the plenary hearing and another for the Confirmation Hearing claiming medical reasons. That adjournment request was denied. Doc. No. 50.

The hearing began on October 14, 2026. Contrary to the court's order, the Debtor did not appear in person but instead appeared by Zoom. Nonetheless, the court accommodated the Debtor

by not making her appear in person and proceeded with the hearing. The Debtor did not turn her camera on. First, the court attempted to address/resolve the renewed objection to confirmation of the Modified Plan filed by Exeter, Doc. No. 49, by directly speaking to counsel for Exeter.[5] But before the court could resolve that objection, the Debtor interrupted. The Debtor then advised the court that she had just filed her *Motion to Transfer Case To Newark*, Doc. No. 52,[6] and wished to be heard on it. The court advised the Debtor that it was unaware that such a motion was filed (indeed it was filed at 11:08 a.m. - after the hearings were to start) and that the court would not consider it because the motion was not properly before the court at that time.

After further discussion with the Debtor, it was determined to simply move forward with the hearings and after a combative opening statement by the Debtor, the court asked the Standing Trustee to present their case. The questioning started and the Debtor was again very contentious, argumentative and disruptive, making erroneous allegations. She refused to answer relevant questions despite being given ample opportunity to do so. Instead, it became apparent that the Debtor would remain uncooperative and belligerent and continue with her baseless accusations.[7] Accordingly, the court determined to end the plenary hearing but allow the parties to make further written submissions for the court to consider in making its decision.[8]

The Standing Trustee was given two weeks to file a response, which they timely did, *see* the Standing Trustee Brief, and the Debtor was given two weeks from that date to file her response. The court confirmed with the Debtor that November 10, 2026 was the date when her papers were due. Doc. No. 58. Remarkably, on the date that her submissions were due, at 2:30 p.m., the Debtor asked for an extension of time to file her response until November 13, 2026, Doc. No. 60, which – the court accommodated. Doc. No. 61. The Debtor filed a response on November 13, 2026. Doc. No. 63 (the "Debtor Response"). With that timely submission, the record is closed.

In the Debtor Response, the Debtor opens with:

> This case represents a case of prejudice and judicial misconduct by the Office of Trustee in Cherry Hill, NJ and Judge Altenburg of the US Bankruptcy Court in Camden, NJ. Debtor has laid the foundation for this prejudicial behavior in previous

---

[5] Ironically and something contrary to the suggestions of the Debtor in the Debtor Response, the court was attempting to address the Exeter Objection directly with counsel to Exeter to perhaps provide for a better payment by the Debtor, but because the Debtor interrupted and demanded to be heard, that discussion never went further.

[6] Another example of the Debtor's awareness and use of the bankruptcy and judicial process.

[7] As outlined in the 2023 Opinion, the court is all too familiar with the Debtor's pattern, as set forth in explicit detail in Part V, *infra*. She tries to avoid a hearing with multiple, last minute adjournment requests, feigns ignorance about the purpose of the plenary hearing, claims she is not prepared, makes demands and specious accusations, and becomes combative and quarrelsome in answering the most basic questions. What is more, without any support at all, she attacks others accuses them of unlawful conduct and places blame on others without taking any responsibility for or addressing the issues raised.

[8] *See* Rule 611(a) of the Federal Rules of Evidence, incorporated into bankruptcy proceedings by Fed. R. Bankr. P. 9017. *See also 56 Assoc. v. Diorio*, 381 B.R. 431, 439–40 (D.R.I. 2008) ("Under the Federal Rules of Evidence [a court] is empowered to exercise precisely this type of control over the proceedings") (citing Fed. R. Evid. 611(a) and *Kelley v. Airborne Freight Corp.,* 140 F.3d 335, 347 (1st Cir.1998)).

> filings by debtor. In fact, the Office of the Trustee in Cherry Hill, NJ in collaboration with Judge Altenburg have colluded together to ensure the debtor does not meet continuation of her chapter 13 case despite debtors sincere efforts to do so repeatedly pro-se.

*Id.* at p.1. The remainder of the Debtor Response is a series of disgraceful accusations, nonsensical arguments unsupported by the actual facts or law, and seemingly places responsibilities on others for things that clearly fall within her duties as a chapter 13 debtor. The Debtor's argument that under "section 547 of the bankruptcy code, the Office of Trustee can only review bankruptcy claims for 90 days prior" is completely without merit and even if there was some basis, it has no relevance to the Debtor's lack of good faith.

Finally, with the Debtor Response, the Debtor filed new Schedules I, J, and another modified chapter 13 plan (the "Second Modified Plan"). Doc. Nos. 64 and 66. The Debtor provides no documentation which support her new Schedules or Second Modified Plan. Schedule I still reflects that the Debtor is unemployed, but makes $775 in monthly gross wages, salary and commissions and now, the Debtor has an unknown monthly contribution of $1200. The Standing Trustee once again put the Debtor on notice of the issue of no proof of all the income listed on Schedule I in the Standing Trustee Brief at ¶55 and p.17 but the Debtor chose to ignore. Her new Schedule J reflects no changes from her previous amendment (with still no living expenses). The Debtor now claims she has $1575.00 in monthly disposable income. Her new modified plan provides for 36 monthly payments of $1248 for total plan payments of $44,928. The Debtor proposes to pay Exeter $44,900 (Exeter's total claim is $70,309.84 which cannot be crammed down) and provides for no payments to unsecured creditors.

## V. THE DEBTOR'S MULTIPLE BANKRUPTCY FILINGS

When determining a lack of good faith, it is appropriate to look to the history of the multiple bankruptcy cases filed. *In re Mondelli*, 558 F. App'x 260, 263 (3d Cir. 2014). Indeed, "a Debtor's prepetition conduct, including [her] conduct in prior cases, is a valid consideration in determining a debtor's good faith in filing a subsequent case and confirmation of a proposed plan." *In re Parson*, 632 B.R. 613, 626 (Bankr. N.D. Tex. 2021). As such, the court may consider the truth of documents submitted in a previous case when those documents would be admissible under the Federal Rules of Evidence. *In re Bestway Prod., Inc.,* 151 B.R. 530, 541 (Bankr. E.D. Cal. 1993), *aff'd sub nom*, *In re Wetherbee*, 165 B.R. 339 (B.A.P. 9th Cir. 1994), *aff'd*, 165 B.R. 339 (B.A.P. 9th Cir. 1994); *see also In re Aughenbaugh*, 125 F.2d 887, 889 (3d Cir. 1942). A court may look to its own records and the filed documents in the prior cases because "verified Schedules and Statements filed by a debtor[ ] are not just pleadings, motions or exhibits thereto. They are evidentiary admissions." *In re Earl*, 140 B.R. 728, 731 n.2 (Bankr. N.D. Ind. 1992) (citing *In re Cobb*, 56 B.R. 440, 442 n. 3 (Bankr. N.D. Ill. 1985) and Fed. R. Evid. 801(d)(2) (admission by a party opponent not hearsay)).

With all that, it cannot be disputed that the Debtor is an experienced, self-represented repeated bankruptcy filer. Having had the opportunity to observe the Debtor on many occasions, the court does not in any way accept that she is naïve to the process. The history of her filings, her pleadings, her own motions in this case, and court orders, and her arguments evidence that she is

not unsophisticated and understands the bankruptcy process, has been advised of her duties, chooses to ignore her duties and court orders, and has been afforded many accommodations but refuses to participate as an honest but unfortunate debtor.

For the sake of brevity, in the following paragraph, the court will lay out a summary of a consistent pattern that has run through all of the Debtor's bankruptcy cases. What follows after that is an analysis of each case which details support this summary. Finally, the court brings into this opinion a discussion of the two 2026 cases filed by the Debtor to support its decision that the Current Case is a further continued pattern of abuse of the process by the Debtor and must be dismissed as a bad faith filing.

Notably, each case filed by the Debtor that the court is familiar with was an emergency petition as a result of a landlord eviction/collection action. The Debtor erroneously accuses, without any support, other parties of serious misdeeds and baselessly attacks the parties in her case. Postpetition payments are not made. The Debtor does not comply with her duties as a debtor. The Debtor lacks candor in her incomplete and inaccurate pleadings. The Debtor makes misrepresentations. Her plans are patently not feasible. The Debtor does not cooperate with the Standing Trustee. She did not meet deadlines. Each case was ultimately dismissed due to the Debtor's failure to fulfill her duties, make payments and/or file/confirm a feasible plan.

**i. The 2016 Case**

The Debtor commenced a bankruptcy case on March 22, 2016, by filing an emergency petition, Bankr. No. 16-15387-ABA, Doc. No. 1 (the "2016 Case"). She indicated thereon that her landlord had obtained an eviction judgment against her. 2016 Case, Doc. No. 1 at 3. The landlord confirmed this. Doc. No. 17. The Debtor also filed at that time a Certificate of Credit Counseling, Doc. No. 5, an Application to Pay Filing Fees in Installments, 2016 Case, Doc. No. 7, and an Initial Statement About an Eviction Judgment (Official Form 101A), 2016 Case, Doc. No. 9. The list of creditors attached to her petition only disclosed two creditors: her landlord, Charles Kelchner, and First Premier Bank South Dakota but did not disclose First Premier's address.

Because she did not include with her petition any of the schedules, statements, or other documents required by Fed. R. Bankr. P. 1007, the Debtor had the duty to file those within fourteen days. Fed. R. Bankr. P. 1007(c). She did not. The court issued its *Order to Show Cause Why Case Should Not be Dismissed for re: Failure to File Missing Documents*, 2016 Case, Doc. No. 8. The Debtor then filed a motion to extend time to file missing schedules, which was contested. Ultimately, before a hearing on the motion to extend could be heard, she filed her missing Schedules, and the court permitted the case to proceed. 2016 Case, Doc. No. 22. With her missing Schedules, the Debtor added Midland Funding, LLC as an unsecured creditor, and as the only other creditor in the case. Despite listing it on her list of creditors filed with her emergency petition, the Debtor did not list First Premier Bank South Dakota on her schedules as a creditor in the case (although she did include that entity in determining deductions for debt payment on her Chapter 13 Calculation of Your Disposable Income. 2016 Case, Doc. No. 22 at 38). The Debtor never made any further amendments to her petition or schedules.

On her Initial Statement About an Eviction Judgment, signed as certified under penalty of perjury, the Debtor stated that her landlord obtained a judgment for possession against her and that, as required, she had given the bankruptcy court clerk a deposit for the rent that would be due during the thirty days after the filing of the petition. *See* 11 U.S.C. § 362(l)(1)(B). This proved to be false, as the clerk docketed a *Clerk's Notice of Service of Certified Copy of Docket Report pursuant to 11 U.S.C. section 362(l)(4)(B)* stating that "The debtor has not complied with the certification requirement(s) of 11 U.S.C. section 362(l)(1). The exception to the automatic stay pursuant to 11 U.S.C. section 362(b)(22) applies." 2016 Case, Doc. No. 10. With the Debtor having failed to comply with her duties as a debtor, specifically with the requirements of Form 101A and relevant statutes, the landlord was free to proceed with his eviction action.[9]

The Debtor was very contentious and argumentative in her case. Without support, she made serious allegations about her landlord, seeking to reimpose the stay against him and also to have the court consider sanctions against him for allegedly violating the stay. 2016 Case, Doc. Nos. 20, 34. Despite her failure to comply with the basic motion standards even minimally, as a courtesy, the court scheduled the matters with return dates so that the Debtor could be heard. As to reimposition of the stay, the court asked the Debtor whether she believed that she had the right under state law to set aside the eviction judgment as she had certified on Form 101A. 2016 Case, Doc. No. 47, Audio of 05/04/2016 hearing at 10:16 a.m. The Debtor acknowledged that she did not have the right to do so, contradicting her previous sworn statement, and clarified that she was seeking relief exclusively under bankruptcy law. *Id.* As to the sanctions motion, the Debtor failed to appear to prosecute it and thus failed to meet her burden. Having not produced any evidence or legal support warranting the relief requested, both motions were denied. 2016 Case, Doc. Nos. 42 and 49.

Other relevant facts about the 2016 Case: The Debtor properly listed her landlord on Schedule G, which requires the disclosure of unexpired leases, 2016 Case, Doc. No. 22, but did not make any postpetition payments to him. The court issued multiple notices regarding her failure to pay fees. 2016 Case, Doc. Nos. 23 and 48. Even though it was her duty to do so, her plan did not provide any plan payments or length of plan, making it patently unconfirmable. The plan did not provide for any treatment of unsecured claims. The plan provided for the avoidance of a lien

---

[9] While most debtors may cure prepetition defaults under residential leases through their plan, the situation is different when the landlord has obtained a judgment for eviction—like here. Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). But section 362(b)(22) creates an exception for the continuation of an eviction, unlawful detainer action, or similar proceeding involving residential property in which the debtor resides as a tenant under a lease or rental agreement if the landlord has obtained a judgment for possession of such property against the debtor before the commencement of the bankruptcy case. 11 U.S.C. § 362(b)(22). But even this section has an exception, at section 362(l), which requires that the debtor file with the petition and serve on the landlord a certification under penalty of perjury that (1) circumstances exist in which the debtor would be permitted under applicable nonbankruptcy law to cure the entire monetary default that gave rise to the judgment for possession, and (2) the debtor, or an adult dependent of the debtor, has deposited with the clerk of the bankruptcy court any rent that would become due during the 30-day period after the filing of the petition. 11 U.S.C. § 362(l)(1)(A) and (B). In other words, Official Form 101A. Official Form 101A is part of the Official Forms package and can be easily obtained by debtors, as demonstrated here by the Debtor's use of it. 2016 Case, Doc. No. 9. To be sure, compliance with Official Form 101A is the *only* way debtors who have an eviction judgment against them can retain their residence. They *cannot* use a plan, unless consented to by a landlord, to cure prepetition arrears and remain in possession of the leased property.

not described in any of her pleadings, 2016 Case, Doc. No. 25, Part V. She did not pay filing fees. Ultimately, her case was dismissed due to:

- her failure to attend the section 341(a) creditors meeting;
- make all required pre-confirmation payments to the Standing Trustee; and
- attend her confirmation hearing.

2016 Case, Doc. No. 50. A plan was not confirmed.

In sum, the court found that the Debtor filed the 2016 Case as an emergency petition as a direct result of the landlord eviction action. She accused the landlord of serious misdeeds. Debtor did not make postpetition payments to the landlord. She did not comply with her duties as a debtor. She lacked candor, as she filed incomplete and inaccurate pleadings and failed to disclose information. She made misrepresentations. She did not follow proper procedures. Her plan was patently not feasible. She did not cooperate with the Standing Trustee. She did not meet deadlines. Multiple accommodations were provided to the Debtor. She was argumentative or contentious and accused those who challenged her of misdeeds. She did not pay filing fees. She did not prosecute matters despite being given every opportunity to do so. The case was ultimately dismissed due to her failure to fulfill her duties.

**ii. The 2019 Case**

The Debtor commenced another bankruptcy case on September 11, 2019, by filing another emergency petition, Bankr. No. 19-27448-ABA, Doc. No. 1 (the "2019 Case"). Despite her 2016 Case, the Debtor failed to disclose, as required by Part 2, Question 9 of the petition, that she had filed for bankruptcy within the last eight years. 2019 Case, Doc. No. 1 at 3. As in her 2016 Case, she filed an Application to Pay Filing Fees in Installments, Doc. No. 6, and an Initial Statement About an Eviction Judgment (Official Form 101A), 2019 Case, Doc. No. 2, at the time of filing her petition, and a Certificate of Credit Counseling the next day, 2019 Case, Doc. No. 8. The list of creditors attached to her petition only disclosed three creditors: her landlord (Woodspring Suites), Discover Card Services, and Sallie Mae. As in her previous case, because her emergency petition did not include any of the schedules, statements, or other documents required by Fed. R. Bankr. P. 1007, the Debtor had the duty to file her missing documents within fourteen days. She did not. Instead, she waited nearly a month to do so. *See* 2019 Case, Doc. No. 17. Nevertheless, the court permitted the 2019 Case to proceed.

On her Initial Statement About an Eviction Judgment, the Debtor certified that she had given the bankruptcy court clerk a deposit for the rent that would be due during the thirty days after the filing of the petition and stated that a judgment had not been obtained. Indeed, the landlord stated that while there was an eviction proceeding pending, it had not yet obtained an eviction judgment. The hearing on the eviction judgment in landlord-tenant court was scheduled for the day after the date of filing. 2019 Case, Doc. No. 16-1 at ¶ 6. Thus, because there was not a judgment for eviction, she did not need to file the Initial Statement About an Eviction Judgment as sections 362(b)(22) and 632(l) did not apply. However, what is relevant here is that her action triggered the clerk's office to issue a *Clerk's Notice of Service of Certified Copy of Docket Report pursuant to 11 U.S.C. section 362(l)(4)(B)*, stating that "The debtor has not complied with the certification

requirement(s) of 11 U.S.C. section 362(l)(1). The exception to the automatic stay pursuant to 11 U.S.C. section 362(b)(22) applies." *See* 2019 Case, Doc. No. 10. The docket entries in the 2019 Case reflect that a deposit was not made. Accordingly, the *Notice* was issued because a deposit was not made, contrary to the Debtor's sworn statement. This failure is another example of the Debtor's inaccurate disclosures and careless disregard, or reckless use, of the bankruptcy forms and system.

As to the remaining schedules that she ultimately filed, the Debtor's disclosures were incomplete, inaccurate, inconsistent, and omitted necessary information. 2019 Case, Doc. No. 17. Even though she identified it as a creditor on her list of creditors filed with her emergency petition, the Debtor did not list the claim held by Sallie Mae anywhere on her schedules. In addition, she failed to provide an address or claim information for Discover Card Services. 2019 Case, Doc. No. 16, at 16, 18. Worse is that the Claims Register in her 2019 Case reflects that there were at least four other unsecured creditors that the Debtor never disclosed on her schedules, nor did she ever file amendments to do so in the 2019 Case.

The Debtor failed to disclose applicable information and provided inconsistent information between her filed schedules and her Summary of Assets and Liabilities. *Compare* 2019 Case, Doc. No. 17, at 1–2 *with* at 6–10 and 28–32.[10] Importantly, *Schedule I: Your Income* was not fully completed and *Schedule J: Your Expenses*, was completely blank as to what expenses the Debtor had. These two schedules combined are *fundamental* to a Chapter 13 case as they assist the Standing Trustee, creditors, and the court in determining whether a case or plan is feasible. Her plan, 2019 Case, Doc. No. 18, only provided for payment to her landlord but was not feasible on its face due to the information, or the lack of information, provided. The Debtor never made any further amendments to her petition or schedules.

Almost immediately, the Debtor's landlord filed for relief from the automatic stay due to nonpayment of rent. 2019 Case, Doc. No. 16. The Debtor asked for an adjournment of that hearing to obtain an attorney. 2019 Case, Doc. No. 21. The court accommodated her. 2019 Case, Doc. No. 23. On the return date for the hearing on the stay relief motion, the Debtor requested another adjournment. That request was denied, the matter proceeded, and the Debtor appeared and testified. She admitted that she had not paid any rent postpetition but claimed that she was withholding rent because she was entitled to offset her rent obligation under state law. The Debtor's petition or schedules did not reveal any right to set off the landlord's claim, and her testimony was inconsistent with her plan, which provided for payment in full of the landlord's claim. Finding that there was cause for relief pursuant to 11 U.S.C. § 362(d)(1), the court granted the stay relief motion. 2019 Case, Doc. Nos. 29 and 30.[11]

Thereafter, the Debtor filed a motion to reinstate the stay. As in her 2016 Case, without relevant support, she levied serious allegations against her landlord including claims of fraud and

---

[10] The Debtor did complete her summary in the 2016 Case and, thus, cannot claim ignorance in her failure to do so in the 2019 Case.

[11] As the court explained in its decision, the state court was the appropriate place to litigate state law landlord-tenant disputes. By vacating the stay, the court allowed the parties to continue litigating the matter in state court and raise whatever issues they wished.

criminality. In addition, she accused the court of improperly handling the stay relief motion. 2019 Case, Doc. No. 37. The court never heard the motion to reinstate the stay because the 2019 Case was dismissed upon the Debtor's failure to pay outstanding fees. 2019 Case, Doc. No. 41.

Other relevant facts about the 2019 Case: the Debtor did not list her landlord on Schedule G which requires the disclosure of unexpired leases. Instead, she checked the box "no" when asked if she had any unexpired leases. Debtor did not make any postpetition payments to the landlord. The court issued multiple notices due to the Debtor's failure to pay fees. 2019 Case, Doc. Nos. 5, 26, 32. As set forth above, the case was eventually dismissed due to her failure to pay required filing fees per a court order. 2019 Case, Doc. No. 41. Even though it was her duty to do so, her plan did not provide for any treatment of unsecured claims. 2019 Case, Doc. No. 18, Part V. Pursuant to her requests, once on the basis to obtain counsel, the Debtor's confirmation hearings were repeatedly adjourned as an accommodation, once on the day of the confirmation hearing itself. 2019 Case, Doc. Nos. 19, 20, 34, and 35. Finally, she failed to attend the section 341(a) meeting and make all required pre-confirmation payments. A plan was not confirmed and the case was dismissed.

In sum, the foregoing indisputable facts show that the Debtor filed the 2019 Case as an emergency petition as a direct result of the landlord eviction action. She accused the landlord of serious misdeeds. Debtor did not make any postpetition payments to the landlord. She did not comply with her duties as a debtor. She lacked candor, as she filed incomplete and inaccurate pleadings, and failed to disclose information. She made misrepresentations. She did not follow proper procedures. She failed to abide by the order of the court. Her plan was patently not feasible. She did not cooperate with the Standing Trustee. She did not meet deadlines. She was argumentative or contentious and accused those who challenged her of misdeeds. She did not pay filing fees. She did not prosecute matters despite being given every opportunity. Multiple accommodations were provided to the Debtor. The case was ultimately dismissed due to her failure to fulfill her duties.

**iii. The 2022 Case**

The Debtor commenced another bankruptcy case on June 24, 2022, by filing an emergency petition, Bankr. No. 22-15137-ABA, Doc. No. 1 (the "2022 Case"). She also filed a Certificate of Credit Counseling, 2022 Case, Doc. No. 6, and an Application to Pay Filing Fees in Installments, 2022 Case, Doc. No. 8, with the petition. As in her previous cases, there was an eviction proceeding pending. 2022 Case, Doc. No. 13-1 at ¶ 5. As in her previous cases, because her emergency petition did not include any of the schedules, statements, or other documents required by Fed. R. Bankr. P. 1007 the Debtor had the duty to file them within 14 days. She did not. Instead, once again, she waited nearly a month to do so. Nevertheless, the court permitted the 2022 Case to proceed after she filed the missing documents.

As in her previous cases, the Debtor again failed to properly disclose on the petition that she had filed for bankruptcy within the last eight years as required by Part 2, Question 9 of the petition. 2022 Case, Doc. No. 1. at 3. The list of creditors attached to her petition only disclosed two creditors: her landlord (Roberts Mill Apartments) and Capital One. *Id.*, at 10. As for the remaining schedules ultimately filed, the Debtor's disclosures were incomplete, inaccurate,

inconsistent, and omitted necessary information. 2022 Case, Doc. No. 16. Even though she identified it as a creditor on her list of creditors filed with her emergency petition, the Debtor did not list the claim held by Capital One anywhere on her schedules. In addition, she added Santander Consumer USA as an unsecured creditor and as the only other creditor in the case, however without an address or any information about the claim. 2022 Case, Doc. No. 16 at 39. Again, compelling is that the Claims Register in her 2022 Case reflects that there were at least five other unsecured creditors she never disclosed on her schedules nor amended the schedules to disclose.

The Debtor did not bother to disclose any information on her Summary of Assets and Liabilities. *Compare* 2022 Case, Doc. No. 16 at 1–2 *with all remaining schedules*. As to the most fundamental documents necessary in a Chapter 13 case, the Debtor did not bother to disclose any information required on *Schedule I: Your Income* despite apparent sources of income disclosed in other schedules. 2022 Case, Doc. No. 16 at 52. *Schedule J: Your Expenses* was only partially completed. *Id.*, at 54. Even her amendments to those schedules were not accurate. 2022 Case, Doc. No. 38. She also failed to disclose the address where she had lived at the inception of the 2019 Case. 2022 Case, Doc. No. 16 at 4. Her plan, 2022 Case, Doc. No. 14, only provided for payment to her landlord and a secured creditor, but on its face, it was patently unconfirmable as it proposed to pay over $38,000 in claims with plan payments totaling only $7,200. 2022 Case, Doc. No. 14 at 2, 4. Her modified plan, 2022 Case, Doc. No. 37, which cut her monthly payments in half, obviously did not cure that defect.

Almost immediately, the Debtor's landlord filed for relief from the automatic stay for nonpayment. 2022 Case, Doc. No. 13. In her opposition, as in her previous cases and without support, the Debtor leveled serious allegations against her landlord as well as its counsel. 2022 Case, Doc. No. 23. The matter was resolved through the entry of an *Order Conditioning Relief From the Automatic Stay*. Doc. No. 28. When she defaulted thereunder, 2022 Case, Doc. No. 49, the court entered another *Order Conditioning Relief From the Automatic Stay*, 2022 Case, Doc. No. 58, to provide the Debtor with the opportunity to cure the default.

In addition, the Debtor's secured creditor with regard to her vehicle filed for relief from the automatic stay. 2022 Case, Doc. No. 25. In the Debtor's opposition she, without support and incorrectly, leveled serious allegations against the creditor and its counsel, accusing it of misconduct as it related to her co-debtor. 2022 Case, Doc. No. 35. At the hearing on the matter, the Debtor acknowledged that there was a co-debtor on the obligation to the creditor, and the court explained that therefore it was proper for the creditor to name the co-debtor in its motion. 2022 Case, Doc. No. 46. The hearing on the motion was continued for three months, giving the Debtor the opportunity to file written opposition and status with support, with the failure to do so resulting in stay relief being granted. *Id.* She filed nothing. Accordingly, the court granted stay relief.[12]

Other relevant facts about the 2022 Case: the Debtor did not list her landlord on Schedule G, which requires the disclosure of unexpired leases instead, she left that form blank. 2022 Case, Doc. No. 16. She stated she did not have co-debtors on Schedule H. *Id.* Debtor did not make any postpetition payments to her landlord. The court issued multiple notices due to the Debtor's failure to pay fees, 2022 Case, Doc. Nos. 7, 19, 31, 50, and the case was eventually dismissed because of

[12] Though the case had been dismissed a few days earlier, 2022 Case, Doc. No. 62, the court entered an order granting the motion, 2022 Case, Doc. No. 67, in case the Debtor asked to vacate dismissal. She did not.

her failure to pay filing fees. 2022 Case, Doc. No. 62. Even though she had a duty to do so, her initial plan did not provide for any treatment of unsecured claims. 2022 Case, Doc. No. 14, Part V. Finally, the court frequently adjourned matters to allow her to address the issues in her case including addressing her desire to retain counsel. *See* 2022 Case Docket.

Of particular note, the record in the 2022 Case shows that the Debtor repeatedly failed to perform her duties or abide by agreements. At times, despite contending that she was not, the Debtor became belligerent with the parties involved as well as with the clerk's office and the court, so much so that the court admonished her for her quarrelsome behavior, conduct, and demands. She also failed to follow proper procedure, filed untimely pleadings, and treated the clerk's office like it was her own personal filing clerk. 2022 Case, Doc. No. 40, 46, and 57. Despite all this, and in an effort to assist her in prosecuting her case, the court entered an *Order Conditioning Continuation of Case* prepared by the Standing Trustee that set forth a list of items that needed to be completed just to get to a confirmation hearing. 2022 Case, Doc. No. 61. In addition, during the 2022 Case, the court entered orders and set procedures to enable the Debtor to deal with her secured creditors regarding her postpetition defaults. 2022 Case, Doc. Nos. 28, 58, and 46. Yet, despite asserting in her 2023 Case that she believed her 2022 Case had been three-quarters of the way done,[13] the Debtor allowed her case to be dismissed over an unpaid $73 filing fee as required by court order. 2022 Case, Doc. Nos. 50 and 62; Doc. No. 50 in the 2023 Case.

In sum, the foregoing indisputable facts show that the Debtor filed the 2022 Case as an emergency petition as a direct result of the landlord eviction action. She accused the landlord of serious misdeeds. Debtor did not make any postpetition payments to the landlord. She did not comply with her duties as a debtor. She did not abide by the court's orders. She lacked candor, as she filed incomplete and inaccurate pleadings and failed to disclose information. She made misrepresentations. She did not follow proper procedures. Her plan was patently not feasible. She did not cooperate with the Standing Trustee. She did not meet deadlines. She was argumentative or contentious and accused those who challenged her of misdeeds. She did not pay filing fees. She did not prosecute matters despite being given every opportunity to do so. Multiple accommodations were provided to the Debtor. The case was ultimately dismissed due to her failure to fulfill her duties.

**iv. The 2023 Case**

The Debtor commenced her next bankruptcy case on January 27, 2023, by filing an emergency petition, Bankr. No. 23-10694-ABA, Doc. No. 1 (the "2023 Case"). Like in her 2019 and 2022 cases, there was an eviction proceeding pending. 2023 Case, Doc. No. 34.

Despite her previous cases, the Debtor again failed to properly disclose that she had filed for bankruptcy within the last eight years as required by Part 2, Question 9 of the petition. 2023 Case, Doc. No. 1 at 3. As in her past cases, she filed with her petition a Certificate of Credit Counseling, 2023 Case, Doc. No. 4, and an Application to Pay Filing Fees in Installments, 2023 Case, Doc. No. 7. As to the Certificate of Credit Counseling, she filed the same certificate as filed in the 2022 Case and thus misrepresented on the petition that she had obtained credit counseling

[13] In reality, this was not because she had completed three-quarters of her plan, but because she had paid three of the four filing fee installments. This does not constitute three-quarters completion of the case.

within 180 days prior to her petition. 2023 Case, Doc. No. 1 at 6; *see* Doc. No. 4, and Doc. No. 6 in the 2022 Case. The list of creditors attached to her petition only disclosed two creditors: her landlord (Roberts Mill Apartments) and Capital One.

As in her previous cases, because her emergency petition did not include any of the schedules, statements, or other documents required by Fed. R. Bankr. P. 1007, the Debtor had the duty to file her missing documents within 14 days. She did not. Instead, once again, she waited nearly a month to do so. Nevertheless, the court permitted the 2023 Case to proceed after she filed the missing documents.

As is the normal course for cases that are filed within one year of each other (the 2022 Case was filed in June 2022 and this case in January 2023), the Standing Trustee alerted the court to the fact that the Debtor had multiple prior filings. 2023 Case, Doc. No. 9. As was her typical approach, the Debtor attacked counsel for the then Standing Trustee - Isabel C. Balboa, without support, accusing counsel and presumably the Standing Trustee of prejudice and profiling. 2023 Case, Doc. No. 20. She raised one error made by the Standing Trustee, but the error was immediately remedied and was entirely a non-issue. 2023 Case, Doc. No. 21.

As to the remaining schedules that the Debtor ultimately filed, her disclosures were incomplete, inaccurate, inconsistent, and omitted necessary information, which is remarkable considering the *Order Conditioning Continuation of Case* in the 2022 Case that had listed all the deficiencies to be fixed before considering confirmation in that case. 2023 Case, Doc. No. 26. Again, the Debtor listed the claim held by Capital One on her schedules but failed to provide its address or any information about the claim. 2023 Case, Doc. No. 26 at 27. Once again, the Claims Register in her 2023 Case reflects that there were at least eight other unsecured creditors that the Debtor never disclosed on her schedules or corrected by any amendments thereto. In addition, Santander Consumer USA, listed in her 2022 Case, was omitted, but it has filed a proof of claim in this case evidencing a claim. *See* Fed. R. Bankr. P. 3001(f).

Lacking in the Debtor's disclosures, schedules, and related documents is any information about the disposition of assets she owned as late as in her 2022 Case. For example, Debtor did not provide information about the vehicle she owned in the 2022 Case. 2023 Case, Doc. No. 26 at 13, 47. In addition, as in her previous cases, the Debtor did not bother to disclose any of the *necessary* information required on *Schedule I: Your Income* and *Schedule J: Your Expenses*. Doc. No. 26 at 37–41. The glaring lack of information about her income throughout her documents prevents a determination of net monthly disposable income necessary for plan confirmation. *See generally* 2023 Case, Doc. No. 26. Once again, her plan, 2023 Case, Doc. No. 22, only provided for payment to her landlord. It did not provide for any treatment of unsecured claims. Because Schedules I and J were blank and her Statement of Current Monthly Income, 2023 Case, Doc. No. 26 at 55–57, was incomplete, the plan on its face was patently unconfirmable because the Debtor did not provide an identifiable source of income to support plan payments.

When properly challenged by the Standing Trustee about the lack of completeness to the schedules and related documents, the Debtor cavalierly stated that ***"[r]egarding the schedules, if there are blank lines in the schedules, it is because it is $0 or does not apply."*** 2023 Case, Doc. No. 28 (emphasis added). An incredible statement to make when considering, for example, that

she failed to provide basic information such as an address, account number, amount due, and other information required for Capital One on Schedule E/F. Despite taking nearly a month to file her schedules, the Debtor did not even provide the most elementary information, as was her duty as a debtor. More amazingly, the Debtor then instructed the Standing Trustee to advise her of any discrepancies so that she could amend the schedules. Such a demand is astonishing given that the Debtor had almost a month to provide complete and accurate information the first time around. Nevertheless, as a courtesy, the court deemed an Order to Show Cause (why the case should not be dismissed for failure to file all required documents), 2023 Case, Doc. No. 6, satisfied because, technically, all missing documents were filed. In recognizing and preserving the issue, the court advised the parties: “Whether those documents contain accurate information and/or are otherwise defective, that must be brought before the court upon separate motion. All parties’ rights are reserved in that regard.” 2023 Case, Doc. No. 28.

And, because the Debtor filed her 2023 Case within a year of the dismissal of her 2022 case, the automatic stay terminated with respect to her on the thirtieth day after she filed her current case. 11 U.S.C. § 362(c)(3). the Debtor moved to extend the automatic stay, 2023 Case, Doc. No. 24, but because she did not comply with section 362(c)(3), the court could not grant the relief. Doc. Nos. 37, and 38.

Other relevant facts about the 2023 Case: the Debtor did not list her landlord on Schedule G, which requires the disclosure of unexpired leases, instead checking the box “no.” When asked if she had any unexpired leases, she stated on Schedule H that she did not have co-debtors despite having acknowledged in her 2022 Case that she had one. The court issued multiple notices due to the Debtor’s failure to pay fees. 2023 Case, Doc. Nos. 6, 33, 42, 51. Even though it was her duty to do so, her plan did not provide for any treatment of unsecured claims (even though her modified plan in her 2022 Case did) and on its face, due to the information provided, or lack thereof, it was not feasible. 2023 Case, Doc. No. 22, Part V. As in her 2022 Case, in March 2023 the court admonished the Debtor for ignoring proper procedure and warned her against the use of email as a means to file documents. The court also, as it had in her previous cases, suggested that she retain the assistance of counsel, 2023 Case, Doc. No. 36, but she never did. The court adjourned matters from time to time to allow the Debtor to address the issues in her case. *See* 2023 Case Docket.

The Standing Trustee filed the Dismissal Motion seeking dismissal of the 2023 case for not having been filed in good faith and as an abuse of the bankruptcy process, seeking to dismiss and impose a 180-day bar against future filings. 2023 Case, Doc. No. 32. The Debtor filed opposition, 2023 Case, Doc. No. 40, and Roberts Mill Apartments filed a certification in response to the Standing Trustee’s motion, 2023 Case, Doc. No. 45. As the court does not take lightly allegations of bad faith and abuse, it scheduled the Dismissal Motion for a plenary hearing to afford the Debtor the opportunity to fully address the issues raised. Due to concerns raised by the Debtor, the plenary hearing was adjourned twice. The plenary hearing took place and concluded.

As noted in further detail in its 2023 Opinion, the court did not find the Debtor credible in claiming that she did not understand why the court was conducting a plenary hearing in the case. Likewise, the court found the Debtor evasive, belligerent, and contradicting. Often, she refused to answer questions at all. The Debtor also levied serious, unsubstantiated allegations towards the parties in her case. Her arguments were unpersuasive. In the end, the court dismissed the case

finding that it lacked sufficient good faith to proceed and in addition, put in place an 180-day bar on future filings. In issuing the 2023 Opinion the court noted that it was imposing the bar because:

* * *

> 4) this is a reasonable period of time that will allow [the Debtor] to organize information for a proper prosecution of a bankruptcy case if she chooses – and if she does, she should take this opinion seriously; and 5) her abusive filing warrants a sanction of some kind. Of course, should the abuse persist, the court will impose a much longer bar in the future.

*In re Napier-Lopez*, No. 23-10694-ABA, 2023 WL 3260150, at *16 (Bankr. D.N.J. May 4, 2023).

In sum, the foregoing indisputable facts show that the Debtor filed the 2023 Case as an emergency petition as a direct result of the landlord eviction action. She accused the landlord of serious misdeeds. Debtor did not make postpetition payments to the landlord. She did not comply with her duties as a debtor. She lacked candor as she filed incomplete and inaccurate pleadings and failed to disclose information. She made misrepresentations. She did not follow proper procedures. Multiple accommodations were provided to the Debtor. Her plan was patently not feasible. She did not cooperate with the Standing Trustee. She did not meet deadlines. She was argumentative or contentious and accused those who challenged her of misdeeds. She did not pay filing fees. She did not prosecute or correct matters despite being given every opportunity.

**v. The First 2026 Case**

The Debtor commenced her next bankruptcy case on February 25, 2026, by filing another emergency petition, Bankr. No. 26-12003-ABA, Doc. No. 1 (the "First 2026 Case"). She indicated thereon that her landlord had obtained an eviction judgment against her. First 2026 Case, Doc. No. 1 at 3, but she did not file an Initial Statement About an Eviction Judgment (Official Form 101A) as required. The Standing Trustee discovered that Debtor filed a Motion to Stay an order in the Superior Court of New Jersey in the matter BUR-L-001700-23. This motion was scheduled to be heard on February 27, 2026. The Plaintiff in that matter was Roberts Mill Apartments. Standing Trustee Brief at ¶ 4 and Ex. A.

At the time of filing of the First 2026 Case, the Debtor also filed a Certificate of Credit Counseling, First 2026 Case, Doc. No. 5, and an Application to Pay Filing Fees in Installments, First 2026 Case, Doc. No. 7. The list of creditors that she attached to her petition only disclosed four creditors: Exeter, Robert Mills Apartments LLC, AidVantage and Premier Bankcard but the Court's Claims Register reflects fourteen creditors which filed claims.

Because she did not include with her petition any of the schedules, statements, or other documents required by Fed. R. Bankr. P. 1007, the Debtor had the duty to file those within 14 days. Fed. R. Bankr. P. 1007(c). She did not. After the court issued its *Order to Show Cause Why Case Should Not be Dismissed for re: Failure to File Missing Documents*, First 2026 Case, Doc. No. 6, the Debtor eventually filed all of her missing documents including her Chapter 13 Plan.

In response to a telephone call by Debtor, the Trustee's office emailed the Debtor a list of required documents on March 25, 2026. Standing Trustee Brief at ¶ 7 and Ex. B. The Standing Trustee also mailed the Debtor the Trustee welcome letter, which lists the required documents for the Trustee and explains how to commence monthly plan payments Standing Trustee Brief at ¶ 8 and Ex. C. The Debtor was sent by regular mail and email, a checklist of the required documents. This checklist also provided Debtor with a courtesy 341(a) Meeting of Creditors adjournment date, as the original 341(a) hearing date could not be held due to missing Schedules. Standing Trustee Brief at ¶ 9 and Ex. D. The Standing Trustee did not receive any documentation from the Debtor, and the Standing Trustee office did not receive any payments from Debtor. Standing Trustee Brief at ¶ 10 and ¶ 12. In addition, the Debtor did not comply with the court's order of May 26, 2026, requiring the payment of the final installment of her filing fee. Doc. No. 29.

The Debtor did not appear at her confirmation hearing. Standing Trustee Brief at ¶ 14. Ultimately, the First 2026 Case was dismissed at confirmation just three months later on May 29, 2026, for the following reason(s):

- failure to attend the Section 341(a) meeting;
- failure to file a feasible plan, income and/or budget statement;
- failure to make all required pre-confirmation payments to the Trustee;
- failure to provide all required documents to the Trustee;
- failure to file tax returns;
- failure to provide evidence of income;
- failure to attend Confirmation Hearing;
- failure to resolve Trustee and/or creditor objection; and
- failure to provide photo ID and/or social security card

First 2026, Doc. No. 31 and Standing Trustee Brief at ¶¶ 14-16.

In sum, the foregoing indisputable facts show that the Debtor filed the First 2026 Case as an emergency petition as a direct result of the landlord eviction action. The Debtor did not make postpetition payments to the Trustee. First 2026 Case, Doc. No. 35. She did not comply with her duties as a debtor. First 2026 Case, Doc. No. 31. She did not abide by the court's order. She lacked candor, as she filed incomplete and inaccurate pleadings and failed to disclose information. She made misrepresentations. She did not follow proper procedures. Her plan was patently not feasible. Despite having been given notice of her duties, she did not cooperate with the Standing Trustee. She did not meet deadlines. Multiple accommodations were provided to the Debtor. She did not timely pay filing fees. She did not make plan payments. The case was ultimately dismissed due to her failure to fulfill her duties. *See* First 2026 Case Docket.

**vi. The Current Case**

The Procedural History of the Current Case, set forth above, is incorporated herein. As noted, the Current Case is another emergency petition, which is odd since the Debtor had a full petition and schedules filed in her First 2026 Case that was dismissed just a week earlier. Because it was an emergency petition, the court issued its First OSC prompting the Standing Trustee to file

his Trustee Request alleging bad faith. This was the first time the Debtor was made aware of some of the shortcomings of her case.

As with her past cases, the Debtor indicated on her petition that she rented the property she originally listed as the street address on her petition. Doc. No. 1 at 2. She indicated that her landlord had obtained an eviction judgment against her. Doc. No. 1 at 3, but again, she did not file an Initial Statement About an Eviction Judgment (Official Form 101A) as required. The Debtor also filed at that time a Certificate of Credit Counseling, Doc. No. 5, and an Application to Pay Filing Fees in Installments, Doc. No. 7. The list of creditors attached to her petition in the Current Case lists the same four creditors listed in the First 2026 Case *and two new creditors*, Revvi and Imagine Cared Account. This is interesting since the First 2026 Case, which only lasted three (3) months, was dismissed only the week before the filing of the Current Case and the Docket in that case does not reflect that these two creditors were added as creditors in that First 2026 Case. In addition, the court's Claims Register in the Current Case reflects that actually *thirteen* creditors have filed claims here.

Because she did not include with her petition any of the schedules, statements, or other documents required by Fed. R. Bankr. P. 1007, the Debtor had the duty to file those within fourteen days. Fed. R. Bankr. P. 1007(c). She did not. The Debtor eventually filed all her missing documents including her Chapter 13 Plan. When the Debtor finally filed her missing Schedules, she only included Exeter's claim, which is secured by a vehicle, and Robert Mills LLC as a judgment creditor. Debtor has not provided information about the property secured, the value of that property or the amount of the creditor's claim. The Debtor did not provide information about the four other alleged creditors listed on her initial petition. Nor did she file any information on an accurate address for many of the creditors which filed claims in the case. Compare Claims Register to the Schedules. While the Debtor suggests that she may have a student loan obligation, she failed to provide absolutely any information about that alleged obligation nor is there an expense attributed to it on Schedule J of her petition. Schedule G does not identify a lease despite the Debtor affirming that she was renting her location at the time of filing. The Debtor's schedule I and J reflected a negative monthly disposable income of -$3,308.00. Except for identifying a lawsuit (without any of the required information), the Debtor's *Statement of Financial Affairs* filed with her petition is completely devoid of any information. Doc. No. 15 at 38-49. The court was required to issue another *Order to Show Cause Why Case Should Not be Dismissed for re: Failure to Pay Installment or Miscellaneous Fees*, Doc. No. 39, which fees remain outstanding.

The Standing Trustee also mailed a letter on July 1, 2026, with the required list of documents to be provided in advance of the section 341(a) Meeting of Creditors. This letter also detailed how to remit monthly plan payments. Standing Trustee Brief at ¶ 25. But the Debtor did not remit any payments to the Trustee. Standing Trustee Brief, ¶ 57. The Debtor's original section 341 Meeting of Creditors did not take place nor has the Debtor provided the necessary documentation for that Meeting to take place at a later time. Standing Trustee Brief, ¶ 31 and p.17.

As noted in the Procedural History, *supra*, after the denial of confirmation of the Plan but before the hearing on the Dismissal OSC, the Debtor filed the First Modified Plan and revised Schedules I and J. Doc. Nos. 46 and 48. The Modified Plan called for monthly payments of $666 a month for 60 months and provided for improper treatment of the total secured claim of Exeter in

the amount of $70,309.84. Doc. No. 49 ("Exeter Objection") and its Proof of Claim filed on the court's Claim Register. The Debtor's first revised Schedules reflected a net monthly income of $875. *But,* just to pay the claim of Exeter as set forth in the Exeter Objection and its Proof of Claim, the Debtor would have to pay $1,172 a month. Even if the Debtor could confirm her First Modified Plan as proposed (which she cannot as the value of Exeter's claim cannot be crammed down under 11 U.S.C. § 1325(a)), this would require a plan payment of $978.11, which again the Debtor cannot afford as her net monthly income is only $875 based upon her own Schedules. In addition, the Debtor again failed to address the judgment creditor, Roberts Mills Apartments, LLC (something the Standing Trustee previously brought to the attention of the Debtor), nor does the Debtor list the treatment of unsecured creditors in Part 5. Thus, the Debtor's First Modified Plan was not patently feasible.

On September 24, 2026, the Debtor emailed the Trustee's office requesting a rescheduled date for the 341(a) Meeting of Creditors. In response, the Debtor was provided with a copy of the July 1, 2026 letter detailing the documents necessary to reschedule the 341(a) Meeting. Standing Trustee Brief at ¶ 45 and Ex. J. On October 8th, Debtor provided some documents to the Standing Trustee. The Debtor provided a tax declaration stating she has filed her tax returns for every year. However, the last year she filed a tax return was 2024. The Debtor provided a summary of her 2024 return from H&R Block but did not provide a copy of the actual return. What is marked "Other-Miscellaneous-Federal Tax Return" was a screen shot from H&R Block and not a copy of a 1040 Federal Tax return. The Debtor did not provide proof of income. Standing Trustee Brief at ¶ 45 and Ex. K and L. As of the hearing on October 14, 2026, the Debtor had still not remitted a plan payment to the Standing Trustee. Standing Trustee Brief at ¶ 57.

At the hearing on October 14, 2026, the Debtor stated on the record that she had provided all required documentation to the Standing Trustee. However, proof of income actually was not uploaded to the Trustee portal and received after the conclusion of the hearing on October 14, 2026. Standing Trustee Brief at ¶ 55 and Ex N. Per the date on the child support ledger provided, the document was generated on October 14, 2026, at 11:37 am. *Id.* at Ex. K. And since the Standing Trustee has provided this information via exhibits attached to the Standing Trustee Brief, the court can now acknowledge that one portion of the income set for on the Debtor's Schedule I has been finally produced by the Debtor (something that should have been provided at the beginning of the case). And despite that, the Debtor has not provided any proof of contribution income. So, the Debtor still has not provided proof of her income to support a finding that her case and plans are feasible. Also, the Debtor, unprompted, stated that the copy of the United States Passport provided to the Trustee's was her only valid form of identification as she did not have a driver's license (which is an odd statement considering she is the owner of the vehicle secured by Exeter). Standing Trustee Brief at ¶ 56.

After all that, the undisputed facts and the Standing Trustee Brief, and related Exhibits, demonstrate:

- Multiple unsuccessful Chapter 13 bankruptcy filings made by the Debtor;
- Each case filed involved an emergency or "bare bones" bankruptcy petition;
- Each case contained incorrect, inaccurate and/or incomplete Schedules and information;

- Each case fails to list creditor claims accurately;
- Each case fails to list *all* creditors;
- Each case fails to list Co-Obligors (Serena M. Lopez is a co-obligor on the Exeter debt) *see* Exeter Objection and Proof of Claim of Exeter;
- Each case fails to list any employment information or accurate income information;
- Each case fails to list accurate expense information;
- The Statement of Financial Affairs is basically devoid of necessary information;
- Each case proposed plans or modified plans that were not feasible;
- Amendments to Schedules were inaccurate or incorrect;
- The Debtor failed to cooperate with the Standing Trustee in each case;
- The Debtor has failed to abide by orders of the court in each case; and
- The Debtor failed to perform her duties as a Chapter 13 Debtor in each case.

*See* Standing Trustee Brief, at 9 – 17 by way of further examples.

The Debtor Response fails to address any of these problems. What is more, the new Schedules I, J, and Second Modified Plan, Doc. Nos. 64 and 66 have no supporting documentation except for one small portion of the Debtor's alleged income. On her newly amended Schedule I, the Debtor also noted that she is "[e]xpecting gainful employment within the next year with an increase of income." Doc. No. 64, p., Part 13. No prospect of employment is provided. **In reality, the Debtor has not demonstrated income necessary to support her plans.**

In the Debtor Response, the Debtor asks to be allowed address the claim of "Exeter Finance as primary creditor", Doc. No. 63 at p.3, but she continues to ignore the Exeter Objection stating that due to the co-obligor on the car loan, its total claim of $70,309.84 must be paid and cannot be crammed down. Exeter has renewed its same Objection to the Second Modified Plan. Doc. No. 71. This makes the Debtor's Second Modified Plan patently not feasible because it would require monthly payments to Exeter in an amount in excess of $1953 for 36 months ($70,309.84/ 36 = $1953.05) when she now claims she has only $1575.00 in monthly disposable income. In addition, the Debtor again failed to address the judgment creditor, Roberts Mills Apartments, LLC. Nor does the Debtor list the treatment of unsecured creditors in Part 5. Finally, the Debtor does not dispute that she has still not remitted a plan payment to the Standing Trustee. Standing Trustee Brief at ¶ 57. A chapter 13 debtor simply cannot pick and choose which creditor he or she wishes to deal with and which creditor he or she does not want to deal with. *See generally* 11 U.S.C. §§ 1322 and 1325.

## VI. DISCUSSION

Sadly, with regard to the Current Case, the court cannot help but to think that "[i]t's déjà vu all over again." YOGI BERRA, THE YOGI BOOK: I REALLY DIDN'T SAY EVERYTHING I SAID!, 30 (Workman Publishing 1998). *See also* the 2023 Opinion. The court has again had numerous opportunities to observe the Debtor via Zoom and/or via telephone. The court has examined the Debtor, questioned and listened to her, and she has had full opportunity to speak despite using a portion of that time on unwarranted scandalous and baseless attacks on other parties and the

court.[14] The court has witnessed her demeanor and interactions, and has had ample opportunity to judge her credibility again. Given the history of the Debtor's last five cases and her continued conduct and patterns therein, the court does not find the Debtor credible and the court gives very little weight to the Debtor Response and unsupported amended Schedules and Second Modified Plan.

### A. Cause Exists to Dismiss the Current Case Due to the Debtor's Failure to Abide by Her Duties and/or Propose a Feasible Plan

A chapter 13 case can be dismissed where a debtor fails to comply with his or her duties as required by the Bankruptcy Code and Rules. *In re Ward*, 423 B.R. 22, 34 (Bankr. E.D.N.Y. 2010). "Although the law grants a generous measure of relief to debtors, this benefit is not gratuitous. The law also imposes a measure of responsibility. Persons who invoke the protection of the bankruptcy laws should be especially aware of this requisite." *In re Tornheim,* 239 B.R. 677, 687 (Bankr.E.D.N.Y.1999). The Debtor's "*pro se* status does not excuse her from satisfying the duties and responsibilities imposed by the Bankruptcy Code on a Chapter 13 debtor." *In re Simmons*, 256 B.R. 578, 579 (D. Md.), *aff'd,* 8 F. App'x 228 (4th Cir. 2001).

If a chapter 13 debtor does not comply with his or her duties, a case may be dismissed. *In re Burgos*, 476 B.R. 107(Bankr. S.D.N.Y. 2012). "Section 105 of the Bankruptcy Code authorizes the Court to take *any* action necessary to carry out the provisions of the Code. Additionally, Section 1307 of the Bankruptcy Code authorizes a bankruptcy court to dismiss a Chapter 13 case for cause. Section 1307(c) provides nonexclusive grounds which may constitute cause for dismissal of a Chapter 13 case, including: unreasonable delay by the debtor that is prejudicial to creditors; and denial of confirmation of a plan under section 1325 of this title". *In re Parson*, 632 B.R. 613, 625 (Bankr. N.D. Tex. 2021) (citations omitted). Another ground for cause for dismissal is a debtor's failure to file complete and accurate schedules including a list of all creditors with accurate addresses. § 521(a)(1); § 1307(c); *In re Latovljevic*, 343 B.R. 817, 820 (Bankr. N.D.W. Va. 2006); *In re Tomlin,* 105 F.3d 933 (4th Cir.1997); (failure to file complete schedules is a willful failure to appear in proper prosecution of the case sufficient to dismiss with prejudice); and *In re Nassar*, 216 B.R. 606, 608 (Bankr. S.D. Tex. 1998) (where schedules remain incomplete and incorrect throughout the case, cause exists to dismiss a case). It is also the duty of every debtor to "attend and submit to an examination when the court orders." Fed. R. Bankr. P. 4002(a)(1) and *Burgos*, 476 B.R. at 113 (the failure of a debtor to appear at a 341 meeting of creditors constitutes cause for dismissal). What is more, it is implicit in the duties of every debtor to abide by the court's order or risk dismissal of their case. *In re Herrera*, 194 B.R. 178, 189 (Bankr. N.D. Ill. 1996); *In re Ellis*, 48 B.R. 178, 179 (Bankr. E.D.N.Y. 1985). Here, the Debtor has failed in complying with all of the duties listed above. *See* Section V., iv., above.

Another reason cause exists to dismiss the Current Case is that the Second Modified Plan is not feasible. As the *Tornheim* court noted:

> It is equally clear that a debtor has the burden to show that he or she has regular income. *In re Antoine,* 208 B.R. 17, 19 (Bankr.E.D.N.Y.1997) (citing *In re*

[14] For example, at the September 23, 2026 hearing.

> *Norwood,* 178 B.R. 683, 691 (Bankr.E.D.Pa.1995)). A debtor who "does not produce credible evidence of the existence of a regular income, ... does not qualify for Chapter 13 relief under 11 U.S.C. § 109(e)." *In re Sassower,* 76 B.R. 957, 961 (Bankr.S.D.N.Y.1987) (citing *In re Wilhelm,* 6 B.R. 905, 908 (Bankr.E.D.N.Y.1980)). "There must be some factual basis for the court to determine the regularity and stability of the debtor's income." *In re Mozer,* 1 B.R. 350, 352 (Bankr.D.Colo.1979).

*Tornheim*, 239 B.R. at 677. The court in *In re Parker*, No. 04-40037, 2005 WL 4705288, at *3 (Bankr. D. Idaho Feb. 9, 2005) observed that:

> In order to confirm a Chapter 13 plan, the court must believe that the debtor will be able to make payments under and comply with the terms of the plan. 11 U.S.C. § 1325(a)(6*); In re Rose*, 101 B.R. 934, 941-42 (Bankr. S.D. Ohio 1989). *See also In re Hockaday*, 3 B.R. 254, 255 (Bankr. S.D. Cal. 1980). . . . *In re Eckert*, 485 B.R. 77, 85 (Bankr. M.D. Pa. 2013) (stating "generally, visionary or speculative Chapter 13 plans will not meet the feasibility standard"). Thus, "[t]he Court may only confirm a plan if, among other things, the debtor shows he "will be able to make all plan payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). Whether a plan is feasible presents a question of fact, and the burden of proof lies with the debtor. *In re Hult*, 04.1 I.B.C.R. 18,19 (Bankr.D.Idaho 2004) (citing *In re Gavia*, 24 B.R. 573,574 (B.A.P. 9th Cir.1982)). All Chapter 13 plans involve some degree of speculation; debtors need not be able to guarantee success to satisfy the feasibility requirement. Id. at 20. *See also First Nat'l Bank of Boston v. Fantasia (In re Fantasia)*, 211 B.R. 420, 423 (B.A.P. 1st Cir.1997) ("To satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan.").

*Parker*, 2005 WL 4705288, at *3 (Bankr. D. Idaho Feb. 9, 2005).

On her newly amended Schedule I, the Debtor noted that she is "[e]xpecting gainful employment within the next year with an increase of income." Doc. No. 64, p., Part 13. No prospect of employment is provided. The Debtor claims she is now getting a monthly contribution of $1200. Indeed, a debtor's plan can be feasible, even though it relies on contributions, where there is a firm commitment to make the contributions and a long and undisputed history of providing for the debtor. *In re Schwalb,* 347 B.R. 726, 759–60 (Bankr. D. Nev. 2006). However, where no evidence in support of the contribution is submitted, the plan is not feasible. *See In re Khan,* 2015 WL 739854, at *3–4 (Bankr.D.Colo. Feb. 19, 2015) (holding that plan was not feasible where business income was speculative and "occasional contributions" from wife's family were not documented or otherwise supported by evidence); *In re Crowder,* 179 B.R. 571, 574 (Bankr.E.D.Ark.1995) (dismissing chapter 13 case where debtor's father did not affirm any specific amount or other assistance that would continue for duration of the plan); *In re Norwood,* 178 B.R. 683, 691 (Bankr.E.D.Penn.1995) (denying confirmation where debtor did not provide any evidence of the amount of mother or sister's income or of their other expenses and liabilities).

In the end, the Debtor's current income now is unsupported and at best, speculative. Her expenses listed on Schedule J, Doc. No. 64, does not seem realistic in the court's experience. And even though the Debtor was given multiple opportunities to submit exhibits ahead of her hearings, as well as in response to the Standing Trustee Brief, **she did not**. The record was closed on November 13, 2026 with the submission of her Debtor Response, amended Schedules and Second Modified Plan. And even if the court could accept the Debtor's calculations in her Schedules I and J, Doc. No. 64, the payments required to be made under the Second Modified Plan to Exeter alone - $1953 for 36 months – demonstrates that her current monthly disposable income of only $1575.00 is not enough to make the Second Modified Plan feasible. "Chapter 13 debtors rarely have any reliable guarantee of employment. All that is required for the Court to find that a plan is feasible, where the budget is based upon reasonable, affordable expenses, is that the debtors' expectations of income are *sufficiently realistic* that they should be given an opportunity to carry out the plan they propose." *Rose*, 101 B.R. at 942 (finding the debtor's plan unfeasible because "the [d]ebtor's projected future earnings are so speculative here that his risk of failure is impermissibly great"). The Debtor has failed in her burden to demonstrate feasibility of the Second Modified Plan and that it has a reasonable likelihood of success because the Debtor has not demonstrated that she will have the necessary resources to make all payments as directed by the Second Modified Plan. ***Confirmation of the Second Modified Plan is therefore DENIED.*** The Debtor has been given multiple opportunities to prosecute her case, provide proofs and propose a feasible plan. Her choice to proceed in this case the way she has and conduct she exhibited do not warrant any further extension. The court will not afford the Debtor any further time in the Current Case. Cause exists to dismiss the Current Case. 11 U.S.C. § 1307(c)(5) and *In re Asken*, No. 05 200092 REF, 2007 WL 1056724, at *3 (Bankr. E.D. Pa. Apr. 3, 2007) (case dismissed for debtors' inability to present any feasible plan).

With all that, the indisputable facts here show that the Debtor, consistent with her pattern in each of her cases, has again filed the Current Case as an emergency petition as a result of the landlord eviction action and at the time of her filing, has demonstrated no regular income. The Debtor did not comply with her duties as a debtor by: filing incomplete and inaccurate Schedules which remained incomplete and incorrect throughout the case; failing to appear and complete her section 341 meeting of creditors; abide by the court's orders; filing plans that were patently not feasible; failing to demonstrate that she has regular income necessary to address her plan obligations; not making postpetition payments to the Standing Trustee and not cooperating with and provide documents to the Standing Trustee. She lacked candor as she filed incomplete and inaccurate pleadings and failed to disclose information. Naturally, "[f]iling a piece of paper is meaningless if the content is inaccurate, misleading, or wrong". *In re Exigent Landscaping, LLC*, 656 B.R. 757, 770 (Bankr. E.D. Mich. 2024). For example, the Debtor omitted the numerous other creditors on her petition which have claims against her as evidenced by the court's Claims Register in the Current Case and the First 2026 Case and her Statement of Financial Affairs is completely devoid of relevant and necessary other than a lawsuit which information itself was incomplete.

Throughout the Current Case, the Debtor was argumentative and/or contentious and accused those who challenged her of misdeeds. When given the opportunity to convince the court that she is proceeding in good faith and has a confirmable plan, she did not produce any evidence as was her burden but chose instead to go on the attack. As in the 2023 Case, the court does not find the Debtor credible when she claims that she did not understand why the court was conducting

a plenary hearing in the case. She provided nothing for the court to work with here. The Debtor is not an unsophisticated debtor and knows the bankruptcy process. She cannot play dumb here. As in *Burgos*, 476 B.R. at 110, "[t]here exists in this case a plethora of reasons to dismiss pursuant to the many Bankruptcy Code sections [and Rules in play], *any one of which alone would be sufficient to dismiss*." *Id.* (emphasis added). Likewise, here, sufficient cause exists to dismiss the Debtor's Current Case *for any one of the reasons* set forth above.

**B. Cause Exists to Dismiss the Current Case Due To the Debtor's Lack of Good Faith**

By filing for bankruptcy, an individual accesses a safe harbor in which to remain while they reorganize their debts. To remain in bankruptcy, however, a debtor must play by the rules. When they do not, there are ramifications. The Bankruptcy Code provides that a bankruptcy court may, on the request of a party in interest or the United States trustee, and after notice and a hearing, dismiss a case for cause. 11 U.S.C. § 1307(c). Under subsection (c), a debtor's lack of good faith in filing for bankruptcy is, standing alone, sufficient cause for dismissal. *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996). "The good faith requirement is the 'policing mechanism' that ensures those who invoke the reorganization processes of Chapter 13 do so only to accomplish the objectives of bankruptcy policy." *In re Parson*, 632 B.R. 613, 625 (Bankr. N.D. Tex. 2021). "The standard for good faith applicable to repeat filers is similar to the standard of good faith required for confirmation, which focuses on a debtor's intention to perform the obligations under the plan a*nd not abuse the bankruptcy process*. . . . While a debtor's serial filings do not necessarily constitute bad faith, a debtor's prepetition conduct, including his conduct in prior cases, is a valid consideration in determining a debtor's good faith in filing a subsequent case and confirmation of a proposed plan." *In re Jordan*, 598 B.R. 396, 406–07 (Bankr. E.D. La. 2019). Still,

> A finding of actual fraud is not required for a determination of bad faith. *Id.* at 1352 n. 8. Rather, the requirement is that "*the bankruptcy court preserve the integrity of the bankruptcy process by refusing to condone its abuse." Id.* (alternation in original) (quoting *Shell Oil Co. v. Waldron (In re Waldron),* 785 F.2d 936, 941 (11th Cir.1986)). To constitute bad faith, "the debtor's conduct must, in fact, be atypical." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 375 n. 11, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007).

*In re Rotellini*, 510 B.R. 241, 245 (Bankr. E.D. Mo. 2014) (emphasis in original).

"[T]he good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances." *Lilley*, 91 F.3d at 496. While the onus is on the objecting party to move for dismissal, once the objecting party calls into question a petitioner's good faith, the burden shifts to the debtor to prove their good faith. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). As demonstrated, the Standing Trustee, supported by the record, has met their burden by showing that: the Debtor has filed multiple bankruptcy petitions as emergency petitions as a result of a landlord action; has repeatedly failed to file complete and accurate petitions and Schedules; has repeatedly failed to pay fees; has repeatedly failed to file feasible plans; has repeatedly failed

to abide by court orders, and has generally failed to provide information necessary for prosecution of her cases. The burden then shifted to the Debtor to overcome the suggestion of a lack of good faith. Having reviewed the record of all the Debtor's cases and particularly the Current Case, having heard the Debtor and considered her submissions, and having the opportunity to assess her credibility first-hand, the court cannot conclude that the Debtor can overcome a determination of a lack of good faith in the filing of the Current Case. To be sure, in the court's experience, the Debtor's conduct here is atypical and deviates significantly from the usual and expected conduct of the honest but unfortunate debtor.

There is not a single test or bright-line rule that courts use to determine whether a debtor is acting in good faith. Rather, good faith must be assessed on a case-by-case basis, in light of the totality of the circumstances. *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996). In assessing a debtor's good faith, relevant factors include, but are not limited to, "the nature of the debt; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." *In re Mondelli*, 558 F. App'x 260, 263 (3d Cir. 2014) (citing *In re Lilley*). The court may also consider the history of prior bankruptcy proceedings, including previous petitions. *Id.* Again, "the Court does not need to find any fraudulent intent by the debtor in her Chapter 13 filing" when determining a lack of good faith. *Parson*, 632 B.R. at 626 and *Rotellini*, 510 B.R. and 245. Even more, courts have found that a debtor's abusive filings, repetitive documents, reasserting previously rejected arguments, unsupported allegations and repeated erroneous accusations – including theories of conspiracy cast against creditors, the Chapter 13 trustee, and bankruptcy court is the type of conduct warranting conversion or dismissal of the debtor's case for a lack of good faith. *In re Fedorova*, No. 22-02309-SWD, 2026 WL 757677 (Bankr. W.D. Mich. Mar. 17, 2026) and *In re Wynn*, 573 B.R. 485, 486 (Bankr. W.D.N.Y. 2017), *order aff'd, appeal dismissed,* No. 17-CV-6547L, 2018 WL 10038798 (W.D.N.Y. Feb. 15, 2018).

A debtor's history before the court is directly relevant to the court's good faith determination, and courts have consistently recognized that a history of multiple bankruptcy cases, filed without a genuine intent to reorganize, is evidence of bad faith. *In re Mondelli*, 558 F. App'x at 263; *see also In re Casse*, 198 F.3d 327, 332 (2d Cir. 1999); *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999). In addition, the Debtor's history of bare-bones filings warrants a determination of a lack of good faith in filing the 2023 Case. *See In re Kearns*, 616 B.R. 458 (Bankr. W.D.N.Y. 2020) (four filings, each dismissed for failure to file most of the required schedules, statements, official forms, or a Chapter 13 Plan); *In re Meltzer*, No. BR 19-21110-PRW, 2020 WL 129441 (Bankr. W.D.N.Y. Jan. 10, 2020) (two bare-bones petitions); *In re Perkins*, No. 19-51202 (JAM), 2020 WL 223910 (Bankr. D. Conn. Jan. 7, 2020) (three bare-bones filings); *In re Craighead*, 377 B.R. 648 (Bankr. N.D. Cal. 2007) (five bare-bones filings). The indisputable facts show that at its core, the Debtor's history before the court reveals a pattern of abuse of process that is consistent with her behavior in the Current Case. Each and every case filed by the Debtor followed the same pattern: emergency petition filed with pending landlord proceedings; inaccurate and incomplete Schedules and other related documents with omissions of the most basic information like the inclusion of creditors, inaccurate disclosure of assets and liabilities, and large swaths of her official forms completely blank; unconfirmable plans; failures to abide by her duties and with court orders; failures to cooperate with the Standing Trustee; failure to pay fees; failure to make post-petition

payments; failure to attend meetings and confirmation hearings; failures to confirm plans; fails to correct deficiencies; scandalous allegations made against parties involved; and repeated dismissals. The Debtor produced no evidence to support her petition and Schedules, any of her proposed plans and/or her pleadings. Her scandalous allegations have no merit and do not overcome her burden. The court again easily finds that these factors warrant a finding of a lack of good faith. *See In re Napier-Lopez*, No. 23-10694-ABA, 2023 WL 3260150 (Bankr. D.N.J. May 4, 2023).

By way of example, the Debtor's Claims Registers in each of her cases reveal that she repeatedly leaves creditors off her petitions. In the Current Case, despite having a case dismissed just the week before, the First 2026 Case, a case where she eventually filed all of her Schedules and documents, in the Current Case she chose to file an emergency petition and when she finally got around to filing the missing documents they were incomplete when comparing them to the First 2026 Case documents and Claims Register. Also in the Current Case, she failed to abide by court orders by failing to stick to deadlines and failing to appear in person.

The Debtor's lack of good faith in this case is further evidenced by her woefully deficient Schedules that are riddled with inaccuracies, misrepresentations, inconsistencies, and omissions in this case alone. Bankruptcy requires that debtors be honest and forthcoming with the court and with their creditors, and failure to do so is evidence of bad faith. *Lilley*, 91 F.3d at 496; *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007). "Accurate and honest disclosure of income is crucial to an evaluation of a debtor's good faith, and a debtor's concealing of a source of income may support a finding of bad faith." *In re Ladieu*, No. 14-10551, 2015 WL 3503941, at *13 (Bankr. D. Vt. June 1, 2015). The court "considers a debtor's duty to file true and complete schedules to be of immense significance when it evaluates whether a debtor has acted in bad faith." *In re Gutierrez*, 528 B.R. 1, 23 (Bankr. D. Vt. 2014). "Dismissal based on lack of good faith . . . is generally utilized . . . in those egregious cases that entail concealed or misrepresented assets and/or sources of income." *Zick*, 931 F.2d at 1129. By filing a thread-bare petition, filing Schedules late and incomplete, and omitting assets and liabilities from her Schedules, the Debtor has not been forthcoming with the court, the Standing Trustee, and her creditors. She has failed to provide the most basic information that would enable the court, the Standing Trustee, and her creditors to determine whether she can effectively reorganize. As noted, her Schedules I and J, which ask debtors to disclose current income and expenses, are inconclusive and unsupportive. The time to provide the information was well before the court was required to conduct a hearing on the Debtor's good faith and even then, the Debtor provided information after the 10/14 Hearing. This alone could warrant dismissal of the Current Case, as "a debtor may render Schedules I and J sufficiently unreliable as to warrant a finding of bad faith premised solely on the lack of truthful disclosure." *In re Broder*, 607 B.R. 774, 779 (Bankr. D. Me. 2019) (citing *In re McNichols*, 254 B.R. 422, 431-432 (Bankr. N.D. Ill. 2000)).

Likewise, due to her failure to abide by her duties, the court cannot even conclude whether the there was a bona fide change in circumstances to determine whether the Current Case was proper. "'[C]hanged circumstances' required to justify a successive filing must be positive changes, i.e., debtor's objective, financial circumstances and ability to perform the plan proposed must have improved between dismissal of the prior case and commencement of the new case.' *In re Huerta,* 137 B.R. 356, 368 (Bankr.C.D.Cal.1992)". *In re Herrera*, 194 B.R. 178, 187 (Bankr. N.D. Ill. 1996). The Debtor's petition and Schedules are woefully deficient, and at best, inaccurate;

when given the opportunity to produce support for her case to the Standing Trustee, she failed to do so; she did not provide any exhibits in connection with the plenary hearing as instructed by the court, *see* Doc. No. 57 and the Dismissal OSC, and when given the opportunity to address the Dismissal OSC and confirmation of the Modified Plan, the Debtor refused to participate requiring submissions in writing, she chose to attack others rather than support her case. Her arguments under Bankruptcy Code sections are meritless and have no relevance to whether she has the requisite good faith in proceeding with the Current Case. The court does not find the Debtor and her arguments credible nor are her arguments persuasive. The Debtor has not convinced the court that there was a change in circumstances warranting a finding that the filing of the Current Case was in good faith.

In the same way, the court cannot find that the Debtor proposed her Plan or modified plans in good faith. As noted above, "[g]ood faith is not synonymous with honesty and bad faith is not synonymous with dishonesty. But if the good faith requirement of Section [1325] means anything, it means that the proposed plan cannot be a device to avoid the limitations imposed by the Bankruptcy Code itself. The good faith requirement "is meant to bar the confirmation of a chapter 13 plan ... where the proposed plan, if consummated, would contravene the spirit of Chapter 13." H.R.Rep. No. 1195, 96th Cong., 2d Sess. 24 (1980)." *In re Jackson*, 91 B.R. 473, 475 (Bankr. N.D. Ill. 1988). The Debtor's original Plan sought to pay Exeter anywhere from 120 to 300 months, which as explained *supra*, well exceeds the limitations imposed by the Bankruptcy Code. Her First Modified Plan and Second Modified Plan, also as explained above, were patently not feasible. "The statute requires a debtor to demonstrate that he or she 'will be able to make all payments under the plan and to comply with the plan.'" *In re Soost*, 290 B.R. 116, 131 (Bankr. D. Minn. 2003). The Debtor has not.

Her pattern evidences a condescending, fast and loose approach to her bankruptcy filing. This, coupled with her failure to address her deficiencies, support a determination of a lack of good faith. *See In re Hickman*, 616 B.R. 815, 823 (Bankr. W.D. Okla. 2020) (citing *In re Brown*, 570 B.R. 98, 116 (Bankr. W.D. Okla. 2017)) (failure to amend schedules after becoming aware of their inaccuracies is additional indicia of a debtor's reckless indifference to the truth); *In re Taal*, 520 B.R. 370, 376 (Bankr. D.N.H. 2014) (citing *In re Marrama*, 430 F.3d 474, 478 (1st Cir. 2005), *aff'd by Marrama v. Citizens Bank,* 549 U.S. 365 (2007) (stating that debtors seeking bankruptcy relief may not "play fast and loose with their assets or with the reality of their affairs."); *In re Letsche*, 234 B.R. 208, 214 (Bankr. D. Mass. 1999) ("Such a cavalier approach to documents that must be filed under the pains and penalties of perjury compels this Court to find that the Debtors neither filed their Chapter 13 case or proposed their Chapter 13 plans in good faith."); *In re Kasal*, 217 B.R. 727, 734 (Bankr. E.D. Pa.), *aff'd sub nom*, *Casey v. Kasal*, 223 B.R. 879 (E.D. Pa. 1998) ("The debtor is imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely."). Her written Debtor Response continues with the Debtor's scandalous accusations and simply is not compelling nor supported by the facts or the law. Once again, she simply choses to argue rather than to address and fix her mistakes. The court easily finds that the Debtor's continued cavalier, fast and loose approach to her petition, Schedules, and other related documents in the Current Case, like in her 2023 Case, and her failure to correct her deficiencies, her repeated attempts to reschedule the hearings in the Current Case, her verbal attacks on parties and her unsupported accusations again warrants a finding of a lack of good faith. *Napier-Lopez*, 2023 WL 3260150. This is remarkable

since given the opportunity to understand her mistakes through the 2023 Opinion the Debtor has learned nothing. She is not the honest but unfortunate debtor warranting relief under the Bankruptcy Code.

In light of the totality of the circumstances, *Lilley*, 91 F.3d 496, the court is compelled to find that The Debtor did not file her Current Case with the requisite good faith. The facts demonstrate that the Debtor did not overcome her burden. *Tamecki*, 229 F.3d at 207. The Current Case, which nearly repeats the pattern of all of her other cases, confirms that the Debtor is not the honest but unfortunate debtor entitled to the protections of the Bankruptcy Code, and lacks the necessary prerequisites of good faith and candor. *Napier-Lopez*, 2023 WL 3260150 and *Campbell*, 634 B.R. 647, 653 (*citing Zick*, 931 F.2d at 1129–30).

In the end, Nothing she said, did, or produced excused her from her obligation to comply with her most basic duties of providing simple, complete, and accurate information about her assets and liabilities and income so that her case could move forward. This case is exactly the type of filing that Congress tried to prevent. Bankruptcy courts must guard against these filings as they are abusive and interfere with the bankruptcy process and intent and purpose of the Bankruptcy Code. When, under the totality of the circumstances, a court finds that a case was filed in bad faith or lacked the requisite good faith, that "bankruptcy filing made in bad faith may be dismissed "for cause" under 11 U.S.C. § 1307(c)." *Myers,* 491 F.3d at 125. Cause exists to dismiss the Current Case under 11 U.S.C. § 1307(c) due the Debtor's complete lack of good faith.

### C. Two-Year Bar

The final issue before the court is the Standing Trustee's request to impose a two-year bar on future bankruptcy filings of the Debtor. This is well within the court's discretion. Bankruptcy courts have general, statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); s*ee also In re Ross*, 858 F.3d 779, 783 (3d Cir. 2017). "The basic purpose of section 105 is to assure the bankruptcy courts' power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction. . .. Bankruptcy courts, both through their inherent powers as courts, and through the general grant of power in section 105, are able to police their dockets and afford appropriate relief." *In re Casse*, 198 F.3d 327, 336 (2d Cir. 1999) (citation omitted); s*ee also In re Continental Airlines*, 203 F.3d 203, 208 (3d Cir. 2000) ("Section 105(a) authorizes courts to take actions 'necessary or appropriate' to carry out the provisions of Title 11 of the United States Code."). Furthermore, bankruptcy courts also have the inherent power to sanction abusive litigation practices. *Law v. Siegel*, 571 U.S. 415, 420 (2014); *Marrama*, 549 U.S. at 375–376. The ability to sanction bad faith debtors is also inherent in section 349(a) of the Bankruptcy Code, which provides that "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not . . . prejudice the debtor with regard to the filing of a subsequent petition under this title[.]" 11 U.S.C. § 349(a); *see also In re Thompson*, 557 B.R. 856, 857 (Bankr. W.D. Pa. 2016); *In re Jacono*, 360 B.R. 84, 89 (Bankr. E.D. Pa. 2006); *In re Madison*, 184 B.R. 686, 694 (Bankr. E.D. Pa. 1995). Additionally, "[i]f 'cause' exists, bankruptcy courts have discretion to dismiss with prejudice and bar the filing of subsequent bankruptcies." *In re Jordan*, 598 B.R. 396, 408 (Bankr. E.D. La. 2019) (five year bar for future filings due to Chapter 13 debtor's lack of good faith); *In re Marshall*, 407 B.R. 359, 363 (B.A.P. 8th Cir. 2009) (In deciding a motion to dismiss

on bad faith, the bankruptcy court dismissed with a one year bar and the appellate court finding that "Bankruptcy courts 'invariably derive from § 105(a) or § 349(a) of the Code ... the power to sanction bad-faith serial filers ... by prohibiting further bankruptcy filings for [over] 180 days.'"). In *In re Barttels*, No. 10-16231-A-13, 2011 WL 10653860, at *2 (Bankr. E.D. Cal. Jan. 28, 2011), the court collected cases where cases were dismissed and a bar on future filings was imposed on debtors who frequently filed bankruptcy petitions. *Id.* (citing *In re Armwood,* 175 B.R. 779 (Bankr. N.D. Ga.1994) (Debtor's fifth chapter 13 petition dismissed with prejudice with 180 day bar on filing); *In re Gros,* 173 B.R. 774 (Bankr. M.D. Fla.1994) (Debtor's fifth bankruptcy filing in 25 months dismissed with prejudice with bar on future filing without leave of court); *In re Standfield,* 152 B.R. 528, (Bankr. N.D. Ill. 1993) (one of Debtor's two simultaneously pending cases dismissed with prejudice with 180 day bar on filing); *In re Stathatos,* 163 B.R. 83 (N.D. Tex.1993) (Debtor's fourth bankruptcy case dismissed with prejudice with two year bar on filing); *In re Earl,* 140 B.R. 728 (Bankr. N.D. Ind. 1992) (Debtor's fourth chapter 13 case dismissed with 180 day bar on future filing under § 105)).

This court already determined that due to the Debtor's abusive filing of the 2023 case, imposition of an 180-day bar was appropriate. *See* 2023 Opinion. Despite the 2023 Opinion, the Debtor continued with her almost identical pattern in all her other cases when filing the Current Case. The court concludes that the Debtor learned nothing and her repeated pattern of conduct in this *sixth* chapter 13 bankruptcy case before this court warrants a two-year bar. Here's why:

> First, a bar on future filings is necessary to preserve the integrity of the bankruptcy process. The Debtor is an abusive filer that is simply using the bankruptcy filing as a weapon rather than a tool. She has thwarted the execution of the rights of Exeter, and against her landlord and any other creditor, through the protection afforded through the automatic stay while at the same time not abiding by the simple duties imposed upon her by the Bankruptcy Code. Her actions continue to be prejudicial to her creditors;
>
> Second, the Debtor the Debtor through her repeated failed filings has demonstrated a consistent pattern of failing in her duties, not cooperating with the Standing Trustee, not making payments, ignoring court orders, attacking others and filing plans that are patently not feasible. This reckless pattern has to stop – at least for some time. A two-year bar is an appropriate respite from the Debtor's abusive filings and conduct and is a reasonable period of time that will allow the Debtor to organize information for a proper prosecution of a bankruptcy case if she chooses. The Debtor was aware of the problems with her conduct as set forth in the 2023 Opinion but chose to ignore it;
>
> Third, the Debtor's condescending, fast and loose approach to her bankruptcy filing, and her treatment of the parties involved, evidences a distain for the bankruptcy process. Something she has been warned about. *Napier-Lopez*, 2023 WL 3260150. Recognizing that the goal here is to "preserve the integrity of the bankruptcy process by refusing to condone its abuse" *Rotellini*, 510 B.R. at 245 (citations omitted), the court is compelled to issue a two-year bar in light of the Debtor's many obstructive and baseless scandalous accusations about the Standing Trustee and the court. The Debtor's statements represent a reckless indifference to

the truth and is a smear on the bankruptcy process. The Debtor refuses to abide by the rules and attacks anyone who identifies her shortcomings. She is not an honest but unfortunate debtor and her past cases evidences her unwillingness to change her conduct; and

Finally, the court has already imposed an 180-day bar but that was not effective as the Debtor has demonstrated her intent to continue with the same abusive conduct. The court finds that the Debtor's repeated conduct constitutes bad faith and a repeated abuse of the Bankruptcy Code and bankruptcy process. A two-year bar is appropriate. *In re Seeram*, 669 B.R. 157, 163 (Bankr. D. Md. 2025) (dismissing the bankruptcy case and imposing a two-year bar to refiling where the debtor filed eight cases within nine years); *In re Sun*, 673 B.R. 608, 625 (Bankr. D.N.J. 2025) (imposing a two-year bar on filing against the Debtor based on finding of bad faith); *In re Reaves,* No. 23-12045 (JNP), 2023 WL 3193247, at *1 (Bankr. D.N.J. Apr. 28, 2023) (dismissing the bankruptcy case and imposing a two-year bar due to the debtor's fifteen prior bankruptcy cases and repeated failure to comply with the Code); *In re Oliver*, 323 B.R. 769, 775 (Bankr. M.D. Ala. 2005) (dismissing the bankruptcy case and imposing a two-year bar to refiling where the debtor filed seven cases within nine years).

## VII. CONCLUSION

The court has again regrettably walked away from the situation with the distinct impression that the Debtor believes she can pick and choose how her Chapter 13 case is going to run, and it is going to run on her own terms without regard for what is required by the Bankruptcy Code and Rules. She does not have any regard for her duties and responsibilities as a debtor. The Debtor is sophisticated when it comes to the bankruptcy process. Her own pleadings and multiple motions, referencing specific statutory language, is part proof of this. It is clear that the Debtor once again chooses to be evasive and will address only what she wants to address. She provides contradictory statements. She levies false accusations. She has not learned from her past mistakes clearly identified in the 2023 Opinion. The court again does not have any confidence that she can or will comply with her duties in the Current Case. Because of this and the reasons set forth above, she is far from the honest but unfortunate debtor who deserves the extraordinary relief of bankruptcy protection. Therefore, dismissal of the case due to the Debtor's failures to comply with her duties, propose or confirm a feasible plan, and especially as to her lack of good faith, with a two-year bar on future filings, is appropriate.

An appropriate judgment has been entered consistent with this decision.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: November 18, 2026